979 P.2d 833 (1999)
138 Wash.2d 343
STATE of Washington, Respondent,
v.
Thomas L. LADSON, Petitioner.
No. 65801-3.
Supreme Court of Washington, En Banc.
Argued May 20, 1999.
Decided July 1, 1999.
*836 Law Offices of Daniel J. Rodriguez, by Daniel J. Rodriguez, Tacoma, for Petitioner.
Ed Holm, Thurston County Prosecutor, John M. Jones, Deputy, Olympia, for respondent. *834
*835 SANDERS, J.
The issue is whether pretextual traffic stops violate article I, section 7, of the Washington Constitution. We find they do and, accordingly, reverse the Court of Appeals and reinstate the trial court's suppression order.
The facts are basically undisputed. On October 5, 1995 City of Lacey police officer Jim Mack and Thurston County sheriff's detective Cliff Ziesmer were on proactive gang patrol. The officers explained they do not make routine traffic stops while on proactive gang patrol although they use traffic infractions as a means to pull over people in order to initiate contact and questioning. The trial court factually found:
While on gang patrol, officer Mack selectively enforces traffic violations depending on whether he believes there is the potential for intelligence gathering in such stops.
Clerk's Papers (CP) at 21 (Findings of Fact in the Ruling of the Court Pursuant to Criminal Rule 3.6 (Apr. 12, 1996) [Findings of Fact] ¶ 1.23).
On the day in question Richard Fogle attracted the attention of officers Mack and Ziesmer as he drove by. Fogle and his passenger Thomas Ladson are both African-American. Although the officers had never seen Ladson before, they recognized Fogle from an unsubstantiated street rumor that Fogle was involved with drugs. The trial court found, "Officer Mack's suspicions about Fogle's reputed drug dealing was his motivation in finding a legal reason to initiate the stop of Fogle's vehicle." CP at 20 (Findings of Fact ¶ 1.20).
The officers tailed the Fogle vehicle looking for a legal justification to stop the car. They shadowed the vehicle while it refueled at a local filling station and then finally pulled Fogle over several blocks later on the grounds that Fogle's license plate tabs had expired five days earlier. The officers do not deny the stop was pretextual.
The police then discovered Fogle's driver's license was suspended and arrested him on the spot. CP at 19 (Findings of Fact ¶¶ 1.10, 1.11). After securing Fogle in handcuffs in the squad car, the police conducted a full search of the car "incident to Fogle's arrest." CP at 20 (Findings of Fact ¶ 1.14). Then they turned their attention to the passenger, Thomas Ladson. They ordered Ladson to exit the vehicle, patted him down, and required him to stand against the car while they searched its interior. The police searched Ladson's jacket which was in the passenger's seat and found a small handgun. Ladson was placed under arrest and searched. On Ladson's person and in his jacket the police found several baggies of marijuana and some $600 in cash.
Ladson was charged with unlawful possession of a controlled substance with intent to deliver while armed with a deadly weapon, and possession of a stolen firearm.
Ladson filed a pretrial motion to suppress the evidence on the grounds it was obtained during an unconstitutional pretextual traffic stop. The trial court agreed and granted the motion ruling, "Pretextual stops by law enforcement officers are violative of the Constitution." CP at 21 (Conclusions of Law in the Ruling of the Court Pursuant to Criminal Rule 3.6 (Apr. 12, 1996) ¶ 2.1).
The State appealed and shortly thereafter the United States Supreme Court decided *837 Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 1774-76, 135 L.Ed.2d 89 (1996), holding pretextual traffic stops do not violate the Fourth Amendment to the United States Constitution. Accordingly the Court of Appeals, relying on Whren, reversed the suppression order. State v. Ladson, 86 Wash. App. 822, 830, 939 P.2d 223 (1997). However, the Court of Appeals refused to address the state constitutional claim, stating Ladson inadequately briefed the issue. Ladson, 86 Wash.App. at 829, 939 P.2d 223.
Ladson then sought review by this court. His petition for review, which thoroughly addressed the state law issue, argued article I, section 7, of the state constitution provides broader protection than does the Fourth Amendment in the area of pretextual traffic stops and contended article I, section 7, renders pretextual traffic stops unconstitutional. We granted review of that discrete issue. State v. Ladson, 133 Wash.2d 1028, 950 P.2d 476 (1998).

Analysis
Absent controlling precedent, a party asserting a provision of the state constitution offers more protection than a similar provision in the federal constitution must persuade the court this is so by means of the analysis set forth in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Under Gunwall, the court considers six nonexclusive factors. Id. at 61-62, 720 P.2d 808. Once this court has conducted a Gunwall-type analysis and has determined that a provision of the state constitution independently applies to a specific legal issue, in subsequent cases it is unnecessary to repeat the Gunwall-type analysis of the same legal issue. State v. White, 135 Wash.2d 761, 769, 958 P.2d 982 (1998); State v. Hendrickson, 129 Wash.2d 61, 69-70 n. 1, 917 P.2d 563 (1996). It is already well established that article I, section 7, of the state constitution has broader application than does the Fourth Amendment of the United States Constitution. See, e.g., Hendrickson, 129 Wash.2d at 69-70 n. 1, 917 P.2d 563; State v. Stroud, 106 Wash.2d 144, 148, 720 P.2d 436 (1986); Gunwall, 106 Wash.2d at 63-64, 720 P.2d 808; see also State v. Myrick, 102 Wash.2d 506, 510, 688 P.2d 151 (1984). In City of Seattle v. Mesiani, 110 Wash.2d 454, 755 P.2d 775 (1988), article I, section 7, was interpreted independently of the Fourth Amendment in the context of the same legal issue which is present in this case, namely warrantless stops of automobiles for the purpose of investigation. Mesiani, 110 Wash.2d at 457, 755 P.2d 775. Therefore, pursuant to established precedent governing this case, we appropriately turn directly to an examination of article I, section 7.

Washington Constitution article I, section 7
Washington Constitution article I, section 7, provides:
No person shall be disturbed in his private affairs, or his home invaded, without authority of law.
Article I, section 7, is explicitly broader than that of the Fourth Amendment[1] as it "`clearly recognizes an individual's right to privacy with no express limitations'" and places greater emphasis on privacy. State v. Young, 123 Wash.2d 173, 180, 867 P.2d 593 (1994) (quoting State v. Simpson, 95 Wash.2d 170, 178, 622 P.2d 1199 (1980)). Further, while the Fourth Amendment operates on a downward ratcheting mechanism of diminishing expectations of privacy, article I, section 7, holds the line by pegging the constitutional standard to "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984) (emphasis added).
We begin our analysis by acknowledging the essence of this, and every, pretextual traffic stop is that the police are pulling over a citizen, not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving. Therefore the reasonable articulable suspicion that a traffic infraction has occurred which justifies an exception to the warrant requirement for an ordinary *838 traffic stop does not justify a stop for criminal investigation.
"`As a general rule, warrantless searches and seizures are per se unreasonable.'" State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996) (quoting State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980)). They are, however, subject to "a few `"jealously and carefully drawn" exceptions'... which `provide for those cases where the societal costs of obtaining a warrant... outweigh the reasons for prior recourse to a neutral magistrate.'" Id. (emphasis added) (quoting Houser, 95 Wash.2d at 149, 622 P.2d 1218 (quoting Arkansas v. Sanders, 442 U.S. 753, 759, 99 S.Ct. 2586, 2590-91, 61 L.Ed.2d 235 (1979), abrogated on other grounds by California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991))).
Exceptions to the warrant requirement fall into several broad categories: consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, and Terry[2] investigative stops. Hendrickson, 129 Wash.2d at 71, 917 P.2d 563 (citing Robert F. Utter, Survey of Washington Search and Seizure Law: 1988 Update, 11 U. Puget Sound L.Rev. 411, 528-80 (1988)). The burden is always on the state to prove one of these narrow exceptions. Hendrickson, 129 Wash.2d at 71, 917 P.2d 563.
The warrant requirement is especially important under article I, section 7, of the Washington Constitution as it is the warrant which provides the "authority of law" referenced therein. Mesiani, 110 Wash.2d at 457, 755 P.2d 775. Absent a warrant, "[w]e have recognized that well-established principles of the common law may in some cases be sufficient to provide the authority of law required by Const. art. 1, § 7." City of Seattle v. McCready, 123 Wash.2d 260, 273, 868 P.2d 134 (1994). However, neither party argues a common law exception to the overall warrant requirement for investigatory stops.
At issue in this case is a traffic stop. Whether pretextual or not, a traffic stop is a "seizure" for the purpose of constitutional analysis, no matter how brief. Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Whren, 517 U.S. at 809-10, 116 S.Ct. 1769; Mesiani, 110 Wash.2d at 460, 755 P.2d 775 (Dolliver, J., concurring). An ordinary traffic stop has been analogized by federal courts to investigative detention subject to the criteria of reasonableness set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir.1995). Under the Fourth Amendment to the United States Constitution, such investigative detention is permissible only if (1) "the officer's action was justified at its inception," and (2) "it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20, 88 S.Ct. 1868. Although federal courts construing the Fourth Amendment have concluded pretextual traffic stops may be accomplished without a warrant, we are not bound by that result under our state constitution which provides unique and substantially greater protection.
We have observed that ultimately our state constitutional provision is designed to guard against "unreasonable search and seizure, made without probable cause." State v. Fields, 85 Wash.2d 126, 130, 530 P.2d 284 (1975). However, the problem with a pretextual traffic stop is that it is a search or seizure which cannot be constitutionally justified for its true reason (i.e., speculative criminal investigation), but only for some other reason (i.e., to enforce traffic code) which is at once lawfully sufficient but not the real reason. Pretext is therefore a triumph of form over substance; a triumph of expediency at the expense of reason. But it is against the standard of reasonableness which our constitution measures exceptions to the general rule, which forbids search or seizure absent a warrant. Pretext is result without reason.
Such is the dissent's ultimate dilemma: How can this court articulate an exception to the warrant requirement based upon reasonable necessity when the warrant is avoided, not for a reason which would justify the *839 warrantless investigatory stop, but upon a pretext of form lacking connection to a reasonable, articulable suspicion of criminal activity which would justify the exception to the warrant requirement in the first place? Essentially the dissent suggests the search is not justified by the pretextual stop but by the independent grounds discovered at the stop, claiming, "once the initial stop is made, there may be other justification to detain or search independent of the traffic or equipment violation which justified the initial stop." Dissent at 845. Of course, the dissent presumes its conclusion by assuming the initial pretextual stop was justified which is exactly the problem raised in this case. Even under the Fourth Amendment an investigatory stop for a traffic infraction (Terry stop) is proper only under the Fourth Amendment if "the officer's action was justified at its inception." Terry, 392 U.S. at 20, 88 S.Ct. 1868. Only after that do we consider scope. Therefore it is the dissent, not the majority, which "collapses the justification for a traffic stop into the question of scope." Dissent at 844.
We reached the same result in Mesiani wherein the court unanimously held sobriety roadblocks violate article I, section 7. We found the roadblock at which motorists were stopped and briefly investigated amounted to a Terry stop, but, because the police lacked articulable suspicion of criminal activity to randomly stop drivers, we found the practice unconstitutional under article I, section 7, because it lacked the "authority of law" which would have been supplied by a warrant. Mesiani, 110 Wash.2d at 457, 755 P.2d 775; see also McCready, 123 Wash.2d at 271, 868 P.2d 134.[3]
The question, then, becomes whether the fact that someone has committed a traffic offense, such as failing to signal[4] or eating while driving,[5] justifies a warrantless seizure which would not otherwise be permitted absent that "authority of law" represented by a warrant. The State argues it does. The State asks this court to approve the use of pretext to justify a warrantless seizure. We decline the invitation. Article I, section 7, forbids use of pretext as a justification for a warrantless search or seizure because our constitution requires we look beyond the formal justification for the stop to the actual one. In the case of pretext, the actual reason for the stop is inherently unreasonable, otherwise the use of pretext would be unnecessary.
We adopted a strict no-pretext rule in State v. Michaels, 60 Wash.2d 638, 374 P.2d 989 (1962). There the defendant was *840 stopped and arrested for failing to use a left-turn signal and was searched incident to the arrest. Id. at 639-40, 374 P.2d 989. It was undisputed that the defendant failed to signal and that such failure constituted an arrestable offense; however the facts revealed the stop and arrest were mere pretexts for the officer's desire to conduct a criminal search. Indeed, the search turned up gambling dice for which defendant was prosecuted. Id. at 640, 374 P.2d 989. The issue presented was whether a search incident to a pretextual traffic stop and arrest was valid. After discussing and citing the large body of Washington state law on automobile search and seizure, id. at 640-44, 374 P.2d 989, we rejected the justification of pretext and suppressed the evidence, squarely holding, "An arrest may not be used as a pretext to search for evidence." Id. at 644, 374 P.2d 989 (citing United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775 (1932), and Taglavore v. United States, 291 F.2d 262 (9th Cir.1961)). Just as an arrest may not be used as a pretext to search for evidence, a traffic infraction may not be used as a pretext to stop to investigate for a sufficient reason to search even further. Michaels controls.
The dissent attempts to distinguish Michaels by claiming (1) custodial arrests for minor traffic violations are now prohibited and (2) the search for gambling devices was not justified by a traffic infraction. The dissent also states a stop for a minor traffic violation does not, "in and of itself," justify any further search or seizure beyond "the brief detention permitted to allow the officer to issue and serve a citation and notice." Dissent at 11. These factual differences, however, do not distinguish the principled holding in Michaels that a warrantless search may not constitutionally follow a facially valid but pretextual arrest from the same question posed here in the even less demanding context of a civil infraction traffic stop. In both cases the arrest (or stop) is permissible but for the fact it is a pretext to accomplish an impermissible ulterior motive. In Michaels the search was incident to a pretextual arrest whereas here the stop was a pretext for an investigation to discover grounds which would justify yet a further search. If the warrantless fruits of a pretextual arrest were properly suppressed, the same principle dictates that so too must be the warrantless fruits of a pretextual traffic stop.
In 1968 we again held police may not rely on a pretext to conduct a search or seizure. State v. Montague, 73 Wash.2d 381, 385, 438 P.2d 571 (1968) ("Neither would this court have any hesitancy in suppressing evidence of crime found during the taking of the inventory, if we found that either the arrest or the impoundment of the vehicle was resorted to as a device and pretext for making a general exploratory search of the car without a search warrant.") (citing State v. Michaels, 60 Wash.2d 638, 374 P.2d 989 (1962), and People v. Garrison, 189 Cal.App.2d 549, 11 Cal.Rptr. 398 (1961)).[6]
In 1972 and 1973 the United States Supreme Court backed away from its earlier pretext rulings. In United States v. Robinson, 414 U.S. 218, 221 n. 1, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Supreme Court decided use of a "traffic violation arrest as a mere pretext for a narcotics search" is permissible under the Fourth Amendment so long as the motorist could have been arrested for the violation. Similarly, Gustafson v. Florida, 414 U.S. 260, 266, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), which was decided the following year, held that a search incident to a pretextual traffic arrest is valid even though admittedly pretextual.
But in State v. Hehman, 90 Wash.2d 45, 50, 578 P.2d 527 (1978), our first postincorporation divergence from federal precedent, we rejected Robinson and Gustafson and the Supreme Court's abandonment of the no-pretext rule. In Hehman the issue was whether a search incident-to-an-arrest for a minor traffic stop was valid. Hehman not only rejected the recent federal cases[7] but *841 reaffirmed the pretext rule in Washington and further held under state public policy minor traffic stops could not support an arrest at all because "`the risk of pretext arrests is heightened.'" Hehman, 90 Wash.2d at 49, 578 P.2d 527 (quoting David C. Anson, Note, Criminal ProcedurePersonal Search of Suspect Incident to Custodial Arrest Is Per Se "Reasonable" and Requires No Additional Justification United States v. Robinson, 414 U.S. 218 (1973); Gustafson v. Florida, 414 U.S. 260 (1973), 49 Wash. L.Rev. 1123, 1142 (1974)).
Hehman was "intended to lessen the risk of minor offenses being used for pretextual arrests." State v. Chrisman, 100 Wash.2d 814, 819, 676 P.2d 419 (1984). The Legislature then went even further to protect against pretextual traffic arrests by codifying Hehman and decriminalizing the traffic code. Laws of 1979, 1st Ex.Sess., ch. 136, § 2, codified at RCW 46.63.020; 46.64.015. See State v. Reding, 119 Wash.2d 685, 690, 835 P.2d 1019 (1992) ("[T]he amendments to RCW 46.64.015 were essentially designed to codify Hehman."). One consideration in decriminalizing the traffic code was to prevent police from using traffic infractions to arrest the motorist as a pretext to search. On this point the Washington courts and Legislature agree. The police practice of using the decriminalized traffic code to stop motorists for Terry stops is no different. Hehman prohibits it.
All cases since Hehman and the decriminalization of the traffic code have forbidden pretext to circumvent the article I, section 7, warrant requirement or expand "jealously guarded" exceptions.[8] For example, in State v. Simpson, another article I, section 7, case, this court affirmed the pretext rule in the context of automobile inventory searches, holding for a warrantless inventory search to be valid where the driver was already in jail, "the State must demonstrate that the impoundment was lawful, and that the inventory search was proper and not a mere pretext for an investigatory search." 95 Wash.2d 170, 189, 622 P.2d 1199 (1980) (emphasis added). Once again, warrants are the rule while exceptions are narrowly tailored to meet the reasonable necessity of the common law ground which provides the authority of law to dispense with the warrant requirement. Pretext is no substitute for reason. Thus, this and other pretextual inventory search cases prove the rule that recognized exceptions to the warrant requirement are limited by the reason which called them into existence, not a pro forma device, as the dissent would have it, to undermine the "authority of law" warrant requirement enshrined in our state constitution.
In State v. Houser, also an article I, section 7, case, we held the search of a car glove compartment was justified to determine ownership of the car, but we held search of the car's trunk as an inventory search was impermissible because it was grounded on a pretext to an exception to the warrant requirement which did not constitute legitimate probable cause to conduct a warrantless search. State v. Houser, 95 Wash.2d 143, 155, 622 P.2d 1218 (1980) ("In sanctioning such a[n inventory] search, however, we recognize the possibility for abuse and have required that the State show that the search was conducted in good faith and not as a pretext for an investigatory search."). Houser explained that the police may validly exercise the community caretaking function of removing an abandoned vehicle but may not use that authority as a pretext to conduct *842 unrelated criminal investigation. 95 Wash.2d at 151-52, 622 P.2d 1218. Houser is on point. In the current case, the police may enforce the traffic code, a function similar to the community caretaking function addressed in Houser. They may not, however, use that authority as a pretext or justification to avoid the warrant requirement for an unrelated criminal investigation.
Our courts continue to follow the no-pretext rule in cases of warrantless searches pursuant to the emergency exception. For example, in State v. Angelos, the Court of Appeals held, "When the use of the emergency exception is challenged on appeal, the reviewing court must satisfy itself that the claimed emergency was not simply a pretext for conducting an evidentiary search.... The search must not be primarily motivated by intent to arrest and seize evidence." State v. Angelos, 86 Wash.App. 253, 256-57, 936 P.2d 52 (1997) (citing State v. Nichols, 20 Wash.App. 462, 464, 581 P.2d 1371 (1978)), review denied, 133 Wash.2d 1034, 950 P.2d 478 (1998).[9]
The ultimate teaching of our case law is that the police may not abuse their authority to conduct a warrantless search or seizure under a narrow exception to the warrant requirement when the reason for the search or seizure does not fall within the scope of the reason for the exception.
But in this case the state asks us to abandon our commitment against pretext and significantly undermine the vitality of article I, section 7, in favor of the lower standard under the Fourth Amendment announced in Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Whren rests squarely on Robinson and Gustafson for the proposition that pretext does not run afoul of the Fourth Amendment. Whren, 517 U.S. at 813, 116 S.Ct. 1769. But, "unlike the federal court, we place no importance in Robinson [and Gustafson], since we already rejected its reasoning in Hehman." State v. Chrisman, 100 Wash.2d 814, 820, 676 P.2d 419 (1984). And we have rejected Robinson and Gustafson precisely because of the risk of pretextual searches and seizures. For the same reason Whren does not define or limit our rights under independent state constitutional safeguards. Const. art. I, § 7.[10]
We conclude the citizens of Washington have held, and are entitled to hold, a constitutionally protected interest against warrantless traffic stops or seizures on a mere pretext to dispense with the warrant when the true reason for the seizure is not exempt from the warrant requirement. We therefore hold pretextual traffic stops violate article I, section 7, because they are seizures absent the "authority of law" which a warrant would bring. Const. art. I, § 7.
*843 When determining whether a given stop is pretextual, the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior. Cf. State v. Angelos, 86 Wash.App. 253, 256, 936 P.2d 52 (1997) ("When the use of the emergency exception is challenged on appeal, the reviewing court must satisfy itself that the claimed emergency was not simply a pretext for conducting an evidentiary search. To satisfy the exception, the State must show that the officer, both subjectively and objectively, `is actually motivated by a perceived need to render aid or assistance.'") (citations omitted) (quoting State v. Loewen, 97 Wash.2d 562, 568, 647 P.2d 489 (1982)). We recognize the Court of Appeals has held that the test for pretext is objective only. See State v. Chapin, 75 Wash.App. 460, 464, 879 P.2d 300 (1994). But an objective test may not fully answer the critical inquiry: Was the officer conducting a pretextual traffic stop or not?[11] We cannot agree with Chapin and disapprove it to the extent it limits the query to objective factors alone.
When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed. State v. Kennedy, 107 Wash.2d 1, 4, 726 P.2d 445 (1986). Under article I, section 7, suppression is constitutionally required. State v. White, 97 Wash.2d 92, 110-12, 640 P.2d 1061 (1982); State v. Boland, 115 Wash.2d 571, 582-83, 800 P.2d 1112 (1990). We affirm this rule today, noting our constitutionally mandated exclusionary rule "saves article 1, section 7 from becoming a meaningless promise." Sanford E. Pitler, The Origin and Development of Washington's Independent Exclusionary Rule: Constitutional Right and Constitutionally Compelled Remedy, 61 Wash. L.Rev. 459, 508 (1986). Exclusion provides a remedy for the citizen in question and saves the integrity of the judiciary by not tainting our proceedings by illegally obtained evidence. State v. Crawley, 61 Wash.App. 29, 34-35, 808 P.2d 773 (1991).
Here, the initial stop, which is a seizure for constitutional purposes, was without authority of law because the reason for the stop (investigation) was not exempt from the warrant requirement. It is elementary that "[i]f the initial stop was unlawful, the subsequent search and fruits of that search are inadmissible...." State v. Kennedy, 107 Wash.2d 1, 4, 726 P.2d 445 (1986). Suppression is required. Reversed.
SMITH, JOHNSON, ALEXANDER, JJ., and DOLLIVER, J.P.T., concur.
MADSEN, J. (dissenting)
Under article I, section 7 of the Washington Constitution, the motive of a law enforcement officer is irrelevant when assessing the constitutionality of a stop for a minor traffic infraction. Article I, section 7 prohibits searches and seizures "without authority of law." A constitutionally valid statute may provide "authority of law" within the meaning of article I, section 7, and such authority is provided by state statutes which enable law enforcement officers to stop vehicles and cite the drivers for traffic and equipment violations. Nothing in the statutes limits an officer's authority to make a traffic stop depending upon the motive of the officer, nor is a stop prohibited depending upon the duties to which the officer is assigned.
However, the scope of such a traffic stop is strictly limited by existing statutes and decisional law. Unless there is justification independent of the traffic infraction justifying the initial stop, an officer is prohibited from any detention or search beyond that necessary to issue a citation. The majority collapses the justification for a traffic stop into the question of scope. I dissent.
Article I, section 7, prohibits searches and seizures made "without authority of law." "Authority of law" may be provided by a search warrant. City of Seattle v. *844 McCready, 123 Wash.2d 260, 271, 868 P.2d 134 (1994). Further, "the `authority of law' required by Const. art. I, § 7 ... includes authority granted by a valid (i.e., constitutional) statute, the common law or a rule of this court." State v. Gunwall, 106 Wash.2d 54, 68-69, 720 P.2d 808, 76 A.L.R.4th 517 (1986); State v. Salinas, 119 Wash.2d 192, 202, 829 P.2d 1068 (1992).
Under RCW 46.64.015:
Whenever any person is arrested for any violation of the traffic laws or regulations which is punishable as a misdemeanor or by imposition of a fine, the arresting officer may serve upon him or her a traffic citation and notice to appear in court.... An officer may not serve or issue any traffic citation or notice for any offense or violation except either when the offense or violation is committed in his or her presence or when a person may be arrested pursuant to RCW 10.31.100, as now or hereafter amended. The detention arising from an arrest under this section may not be for a period of time longer than is reasonably necessary to issue and serve a citation and notice ... [subject to certain exceptions].
See RCW 10.31.100; RCW 46.64.030. In addition to issuing a citation and notice for a traffic infraction committed in his or her presence, an officer may issue a notice of a traffic infraction at the request of another law enforcement officer in whose presence the infraction was committed. RCW 10.31.100(6).
These statutes establish that an officer must have probable cause to believe that an traffic infraction has been committed in order to make a stop.[1]See generally State v. Mendez, 137 Wash.2d 208, 211-12, 219, 220, 970 P.2d 722 (1999) (referring to probable cause to stop a vehicle for a traffic infraction).[2] Because the relevant statutes encompass a probable cause standard, they codify a constitutionally valid standard for warrantless traffic stops. Certainly there is no dispute in this case that absent pretextual motive, an officer is constitutionally entitled to stop a vehicle without a warrant where a minor traffic infraction has been committed in the officer's presence.
However, the scope of a stop for a minor traffic violation is limited. With certain express exceptions, the officer may detain the driver only for the period of time reasonably necessary to issue and serve a citation and notice. RCW 46.64.015.[3] The officer is not, *845 without other justification, entitled to further detain the occupants of the vehicle nor to conduct a warrantless search. Both by statute and by decisions of this court, the scope of a stop for a minor traffic offense is limited. Id.; State v. Reding, 119 Wash.2d 685, 835 P.2d 1019 (1992); State v. Hehman, 90 Wash.2d 45, 578 P.2d 527 (1978). An officer's motive in stopping a vehicle to investigate a "hunch," or to engage in a fishing expedition makes no differencethe scope of a stop for a minor traffic infraction is still limited. The officer cannot lawfully exceed that scope. If the officer exceeds that scope, with nothing more than the traffic stop as justification, any evidence unlawfully obtained must be suppressed. Hehman, 90 Wash.2d 45, 578 P.2d 527.
The issue in this case is whether the fact that the officer has another motive in addition to the belief that a traffic infraction has occurred renders a traffic stop unconstitutional at its inception. Contrary to the majority's view, I would hold that the officer's motive does not turn a stop based upon probable cause that a traffic violation has occurred into an unlawful stop. Regardless of the officer's motive, the probable cause standard provides the reasonableness necessary to justify the warrantless stop. Moreover, article I, section 7, focuses on the question whether the state has unreasonably intruded on the individual's privacy interest with that interest being one which Washington citizens have held in the past and are entitled to hold in the future. State v. White, 135 Wash.2d 761, 768, 958 P.2d 982 (1998). Washington citizens who commit traffic infractions have privacy interests at issue when traveling in a vehicle, but those interests are not unreasonably intruded upon where the individual commits a traffic infraction in the presence of an officer and is therefore stopped for issuance of a citation and notice. Our expectations are that we will be stopped and cited for traffic infractions, and we cannot reasonably expect that we are protected from such a stop depending on the officer's other motives.
Of course, once the initial stop is made, there may be other justification to detain or search independent of the traffic or equipment violation which justified the initial stop. For example, an officer may stop for a traffic infraction, such as speeding. The officer also suspects that the driver may be involved in illegal drug activity. When the officer approaches the vehicle to issue and serve a citation and notice, and the officer immediately smells marijuana or sees readily identifiable illegal drugs, the officer then has probable cause to arrest the driver of the vehicle and to conduct a warrantless search. The officer is not justified in doing so based upon the traffic stop, nor based upon suspicion of illegal activity, but rather based upon probable cause ("plain smell" or "plain view") that a crime is being committed independent of the traffic offense. However, any such further detention or search must conform to constitutional standards addressed in the vast number of cases concerning the Fourth Amendment and article I, section 7, and must not exceed the scope of a lawful search and seizure based upon the independent justification.
Contrary to the majority's position, there is no body of law under article I, section 7 directing that any pretextual motive on the part of the officer invalidates a traffic stop based upon probable cause that a traffic infraction has been committed. Turning first, however, to other flaws in the majority opinion, the majority misstates the issue before the court, claiming that the State asks this court to approve the use of pretext to justify a warrantless seizure. Majority at 13. The State without question has not asked this court to do any such thing. The State briefed this case under the Fourth Amendment and particularly relied upon the Supreme Court's decision in Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding that under the Fourth Amendment the motive of the officer when stopping a vehicle for a minor traffic infraction, whether subjective or objective, is completely irrelevant). The State did not ask for a holding that pretext justifies a *846 seizure, but instead for a holding that the traffic stop was lawful regardless of the officers' motives, and the arrest and search incident to arrest were lawful based upon independent probable cause to arrest. Nor is the majority's slanted question the issue. The issue is whether under the state constitution the pretextual motive of an officer making a traffic stop renders the stop and any subsequent search or seizure unconstitutional.
The majority says it does, and announces the mistaken presumption that a pretextual stop for a minor traffic infraction is inevitably an unlawful Terry investigative stop. This presumption is flawed for several reasons. First, the majority relies on a Tenth Circuit case for the proposition that ordinary traffic stops are analogous to Terry investigative stops. Majority at 838 (citing United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir.1995)). While the Tenth Circuit has indicated this standard, the analysis is traceable to Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). There, the Court decided whether roadside questioning of a motorist detained pursuant to a routine traffic stop constituted custodial interrogation for purposes of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). In its analysis, the Court reasoned that a routine traffic stop is analogous to a Terry stop (Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) because such a stop "is presumptively temporary and brief[,]" and "circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police." Berkemer, 468 U.S. at 437-38, 104 S.Ct. 3138. Similar to the nature of a Terry stop, the noncoercive nature of the routine traffic stop led the Court to hold that a motorist temporarily detained in a routine traffic stop is not in custody for Miranda purposes. Id. at 440, 86 S.Ct. 1602.
The Court emphasized, however, that "[n]o more is implied by this analogy than that most traffic stops resemble, in duration and atmosphere, the kind of brief detention authorized in Terry." Id. at 439 n. 29, 104 S.Ct. 3138. As explained above, while a traffic stop in this state indeed involves a limited and brief detention, it is based upon probable cause to believe that a traffic infraction has been committed in the officer's presence. To the extent the majority opinion seems to suggest that a traffic stop is an investigative Terry stop, and accordingly must be confined to situations where the officer's only motive is investigation of possible traffic offenses, it is mistaken. Probable cause provides a basis for the traffic stop. If the officer is to constitutionally investigate any possible criminal activity, there must be a basis independent of the traffic stop to justify that investigation.
The other problem with any reliance on federal cases or Terry`s analysis pertaining to investigative stops is that the majority of federal circuits have recently recognized that a traffic stop based upon probable cause to believe that a traffic infraction has been committed is a constitutional stop under the Fourth Amendment. E.g., United States v. Bizier, 111 F.3d 214, 218 (1st Cir.1997); United States v. Hare, 150 F.3d 419, 426 (5th Cir.1998); Valance v. Wisel, 110 F.3d 1269, 1275 (7th Cir.1997); United States v. Lyton, 161 F.3d 1168, 1170 (8th Cir.1998); United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir.1998). In some of these cases, the courts have reached this conclusion where pretextual motive is alleged. Eg., Valance, 110 F.3d at 1275; Hare, 150 F.3d at 426. These holdings, of course, necessarily follow Whren. Simply put, under federal law a traffic stop based upon probable cause to believe that a traffic infraction has been committed is constitutional regardless of the officer's other motives. Although the majority seems to acknowledge the status of federal law following Whren, it nevertheless treats a traffic stop as a Terry stop based upon reasonable articulable suspicion that an infraction has been committed, and a pretextual traffic stop as an unlawful Terry stop.
The second flaw in the majority's presumption that a pretextual stop is always an unlawful Terry stop is that the governing statutes define and limit the authority of the officers. Officers are authorized by the laws of this State to cite drivers for a number of traffic and equipment violations. Nowhere in the statutes has the Legislature indicated that authority to stop for minor traffic infractions *847 depends upon the motives of the officer, nor is there any indication of legislative intent that only officers routinely engaged in traffic stops may exercise that authority. By the same token, though, the scope of the stop is very limited. The probable cause necessary to make a lawful stop does not justify any further intrusion beyond the limited detention authorized by statute.
Thus, in sharp contrast to the majority's misstatement of the issue in this case (whether pretext justifies a warrantless seizure), in any case where a minor traffic infraction serves as the justification for a stop the constitutional question is whether any detention or search beyond the scope of an initially authorized traffic stop is independently justified. The majority unfortunately collapses the two inquiries because it begins with the premise that a pretextual stop is an unconstitutional Terry stop.
Turning now to cases decided under article I, section 7, those cases relied upon by the majority do not support its result. There is no established body of law establishing the "no-pretext rule" envisioned by the majority. In reviewing these cases, it is important to bear in mind that the State does not maintain that pretext justifies a warrantless seizure. Further, the seizure which occurs when a vehicle is stopped for a minor traffic infraction is based upon probable cause to believe that a traffic infraction has occurred. Any further detention or search is authorized if, but only if, there arises independent justification for the intrusion.
The majority cites City of Seattle v. Mesiani, 110 Wash.2d 454, 456, 755 P.2d 775 (1988). In Mesiani the court held that sobriety roadblocks were unconstitutional under article I, section 7 because they were stops which were search and seizures for which there was no "`authority of law.'" Mesiani, 110 Wash.2d at 457, 755 P.2d 775 (quoting Const. art. I, § 7). Not only did the officers lack reasonable articulable suspicion of criminal activity justifying random stops, as the majority reasons, but in addition the officers had no other lawful basis for stopping the vehicles. Mesiani does not apply here, because, unlike the circumstances in Mesiani, a traffic stop based upon a traffic infraction is supported by probable cause. Law enforcement officers are authorized to stop vehicles for numerous traffic and equipment violations, and as noted, nothing in those statutes precludes their enforcement depending upon the officers' motives. The majority itself calls enforcement of the traffic code "lawfully sufficient." Majority at 10.
The majority says, though, that the court adopted a no-pretext rule in State v. Michaels, 60 Wash.2d 638, 374 P.2d 989 (1962). In Michaels an arrest for a traffic offense was made solely for the purpose of searching an automobile to determine whether it contained contraband (gambling devices), and there was no claim that there was probable cause to believe the automobile contained illegal merchandise. Id. at 644-45, 374 P.2d 989. The court observed that while a search incident to arrest warranted a search for evidence of the crime for which the arrest was made or tools which might help in an escape, neither of these purposes existed in the case. Id. at 642-44, 374 P.2d 989. The Court concluded that the arrest for a traffic violation (failing to signal to turn) made for the sole purpose of conducting a search incident to that arrest, without any other basis for conducting the search, was unconstitutional.
There are two reasons why Michaels does not control here. First, the problem addressed in Michaels, an arrest for a traffic infraction as a pretext for an otherwise unjustified search, is not at issue in this case. Custodial arrests for minor traffic infractions are now generally prohibited. RCW 46.64.015; Reding, 119 Wash.2d 685, 835 P.2d 1019; Hehman, 90 Wash.2d 45, 578 P.2d 527.
Second, under constitutional principles applied when Michaels was decided, a search incident to arrest was limited, as this court noted, to a search for evidence relating to the offense for which the arrest was made or a search for tools to aid in escape. Accordingly, not only was the pretextual nature of the arrest an issue, but also crucial to the decision is that the arrest, for a traffic infraction, did not justify a search for gambling devices. Further, there was no independent probable cause for the officer to believe that the vehicle *848 contained illegal gambling devices. Michaels, 60 Wash.2d at 644, 645, 374 P.2d 989. As the court observed, "[a]n arrest may not be used as a pretext to search for evidence." Id. at 644, 374 P.2d 989 (citations omitted).
Plainly, a stop for a minor traffic infraction, in and of itself, simply does not justify any further search or seizure other than the brief detention permitted to allow the officer to issue and serve a citation and notice. The State does not argue otherwise. No matter what an officer's motives, he or she cannot engage in any further investigation, any further detention of the vehicle or occupants, or any search unless there is justification independent of the probable cause that a traffic infraction has occurred. This is the critical distinction. Michaels simply does not stand for a flat "no-pretext" rule as the majority claims.
Next, the majority cites State v. Montague, 73 Wash.2d 381, 385, 438 P.2d 571 (1968) as standing for the proposition that officers may not rely on pretext to conduct a search or seizure. Again, the premise is wrong because the issue is not whether pretext supports a search or seizure. In addition, the case was decided under the Fourth Amendment. Id. at 389, 438 P.2d 571. The opinion does, however, contain the dicta noted by the majority, i.e., that the court would not hesitate to suppress evidence found during the taking of an inventory if it found that the arrest or impoundment was a pretext for making a general exploratory search of the car. Id. at 385, 438 P.2d 571.
That dicta, while a correct statement of law, does not support the majority. Montague involved a lawful arrest followed by a lawful search of an impounded vehicle for the purpose of finding, listing, and securing the contents from loss during the arrested person's detention. As the Supreme Court pointed out in Whren, 517 U.S. at 811, 116 S.Ct. 1769, also decided under the Fourth Amendment, pretextual inventory searches are distinct from pretextual traffic stops because "`an inventory search must not be used as a ruse for a general rummaging in order to discover incriminating evidence[.]'" (quoting Florida v. Wells, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990)). The Court explained that a pretextual inventory search is a search conducted without probable cause, and the exemption for the need of probable cause is not accorded to a search made for the purpose of an inventory search. Whren, 517 U.S. at 812-13, 116 S.Ct. 1769. In contrast, unlike the case where a constitutional violation results from a pretextual inventory search, no similar violation occurs where a pretextual traffic stop is made for a traffic infraction, and probable cause may independently exist justifying a warrantless search.
Next, the majority cites Hehman, 90 Wash.2d at 50, 578 P.2d 527, as standing for the proposition that this court rejected "the Supreme Court's abandonment of the no-pretext rule" in United States v. Robinson, 414 U.S. 218, 414 U.S. 260, 94 S.Ct. 467, 94 S.Ct. 494, 38 L.Ed.2d 427, 38 L.Ed.2d 456 (1973) and Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). Majority at 840-41. The majority also says that Hehman "reaffirmed the pretext rule in Washington...." Majority at 841. The majority indicates the only reason for the decision in Hehman was to lessen the risk of minor offenses being used for pretextual offenses. The majority states that all cases since Hehman have forbidden the use of pretext to circumvent article I, section 7.
Each and every one of these statements demonstrates a misunderstanding of the decision in Hehman and its progeny. In Hehman, this court held that an arrest for a minor traffic infraction could not serve as a pretext for a search incident to arrest. This holding was not based on state constitutional grounds, but rather on public policy considerations. Hehman, 90 Wash.2d at 47, 578 P.2d 527. The court has specifically rejected the argument that the result in Hehman is compelled by the state constitution. Reding, 119 Wash.2d at 695-96, 835 P.2d 1019. The court has further explained that although the decision in Hehman is not constitutionally based, the exclusionary rule nevertheless applies and evidence seized in violation of that holding must be suppressed. State v. Bonds, 98 Wash.2d 1, 10, 653 P.2d 1024 (1982).
The court in Hehman did not "reject" the United States Supreme Court decisions in Robinson and Gustafson on any constitutional *849 theory, but instead reasoned that state law could be more protective of individual rights than guaranteed by the United States Constitution. Hehman, 90 Wash.2d at 49, 578 P.2d 527. Since Hehman was not founded on the state constitution, the state law found to be more protective was the public policy decision in Hehman. Nothing in the decision indicates rejection of a federal constitutional standard in favor of a state constitutional standard.
The court in Hehman did not "reaffirm" the "no-pretext rule" in Washington, at least not as the majority envisions the "rule." Keeping in mind that the majority persistently and erroneously states the issue to be whether pretext justifies a warrantless seizure, Hehman does not support the majority's conclusion.
Hehman forbids custodial arrest for minor traffic infractions. Since such arrests are now precluded by statute as well, there is no longer any danger that such an arrest can be used as a pretext for a search without probable cause or a warrant. Moreover, contrary to the majority's view, the policy behind the decision in Hehman was not just to preclude warrantless searches incident to such an arrest, i.e., the use of a custodial arrest as a pretext for a search incident to arrest. The court found two reasons for its holding: recognition that custodial arrests for minor traffic offenses are unnecessary to serve the public interest in bringing the violator to justice, as well as the lessening of the risk of pretextual arrests. Hehman, 90 Wash.2d at 48-49, 578 P.2d 527. Indeed, in State v. Chrisman, 100 Wash.2d 814, 819, 676 P.2d 419 (1984), the court described the holding in Hehman and rejection of federal cases as being "due primarily to our recognition that full-blown custodial arrests ... are not necessary to preserve the public interest in bringing the offender to justice." (Emphasis added.) Even as to pretext, though, the holding in Hehman is not that any pretextual motive invalidates any search or seizure, but rather that an arrest for a minor traffic infraction cannot serve as a pretext for a search incident to that arrest.
Hehman simply does not support the majority's view that the state constitution forbids a traffic stop if the officer harbors a suspicion or a hope that the occupants of a vehicle are engaged in other illegal activity. Hehman is not even a decision with a constitutional foundation.
The remaining cases cited by the majority, like those already discussed, do not support the majority's view that the state constitution forbids a traffic stop if the officer has another motive in addition to issuing a citation. State v. Simpson, 95 Wash.2d 170, 622 P.2d 1199 (1980) does not state a broad rule that pretext renders any warrantless search unconstitutional under article I, section 7, contrary to the majority's characterization of the case. Simpson, like Montague, involved an inventory search. The court held the State must show that the impoundment was lawful, and that the inventory search was proper and not a mere pretext for an investigative search. Simpson, 95 Wash.2d at 188-89, 622 P.2d 1199. Like Montague, then, Simpson does not support the majority. Use of an inventory search as a pretext for general rummaging is not permitted under either the state or federal constitutions. A different issue is presented when a traffic stop is justified by a traffic infraction, and probable cause exists, independent of the infraction, to arrest or conduct a search. As noted, it is the lack of such probable cause which makes the pretextual inventory search different.
Bonds does not support the majority's view of the state constitutional issue, as it expressly recognizes that the rule in Hehman is not constitutionally based.
State v. Houser, 95 Wash.2d 143, 622 P.2d 1218 (1980), is not "on point," contrary to the majority at 20. Houser, too, involves an inventory search. The court carefully explained the difference between an inventory search and a search supported by probable cause or a search incident to an arrest. Unlike such searches, an inventory search is not conducted to discover evidence of a crime. Houser, 95 Wash.2d at 153, 622 P.2d 1218. An inventory search is permitted without a warrant, but its direction and scope must be limited to the purpose justifying the exception: finding, listing, and securing from loss during detention the property of the person detained, and protection of police and bailees from liability due to dishonest claims of theft. *850 Id. at 154, 622 P.2d 1218. Entry into a locked truck, the court concluded, was not within this limited scope.
For the same reason that Montague and Simpson do not support the majority, neither does Houser. The majority states, though, that this case is like Houser because here, like the situation there, the police may not use their authority as a pretext to conduct an unrelated criminal investigation. Majority at 842. Again, there is no question that the police cannot use their lawful authority to conduct a stop for a minor traffic offense as a pretext for a search or seizure. That is simply not the issue. The issue is whether the officer's motive invalidates as unconstitutional any detention and any search after the inception of the stop.
The majority's analysis rests on false premises, a misstatement of the issue, and authority which does not say what the majority represents it to say. There is no body of law supporting the proposition that the motive of the officer making a traffic stop is constitutionally relevant under article I, section 7.
Finally, I note that should there be any allegations that an officer's motive in making a traffic stop is relevant because a particular class has been targeted, the Supreme Court has stated: "We of course agree ... that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment." Whren, 517 U.S. at 813, 116 S.Ct. 1769. Similarly, article I, section 7, does not require inquiry into the motive of an officer making a traffic stop, even if discrimination is alleged. Discriminatory motive is relevant, however, under the equal protection and privileges and immunities clauses.
For the reasons stated in this opinion, I dissent.
GUY, C.J., and DURHAM and TALMADGE, JJ., concur.
NOTES
[1] The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] The dissent contends the "authority of law" required by article I, section 7, may be supplied by a statute in lieu of a warrant or recognized common law exception to the warrant requirement, citing State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), and State v. Salinas, 119 Wash.2d 192, 829 P.2d 1068 (1992). Dissent at 843, 844. However in Salinas we specifically recognized the "reach of the Legislature under article 1, section 7 or the interplay between the courts and the Legislature which might be required by the phrase `without authority of law'" in article I, section 7 had not been determined and would "await another case and another day." Salinas, 119 Wash.2d at 203, 829 P.2d 1068. That day came when we explained "[c]ases from the earliest days of statehood indicate search warrants were issued pursuant to statutory authorization." City of Seattle v. McCready, 123 Wash.2d 260, 274, 868 P.2d 134 (1994). That is to say, "statutory authorization" references a statute authorizing a court to issue a warrant, not a statute dispensing with the warrant requirement. Id. See also In re Personal Restraint of Maxfield, 133 Wash.2d 332, 345-46, 945 P.2d 196 (1997) (Madsen, J., concurring) ("Except in the rarest of circumstances, the `authority of law' required to justify a search pursuant to article I, section 7 consists of a valid search warrant or subpoena issued by a neutral magistrate. This court has never found that a statute requiring a procedure less than a search warrant or subpoena constitutes `authority of law' justifying an intrusion into the `private affairs' of its citizens. This defies the very nature of our constitutional scheme and would set a precedent of legislative deference that I am unwilling to accept in our state's constitutional jurisprudence. It is the court, not the Legislature, that determines the scope of our constitutional protections." (Citation and footnotes omitted.)).
[4] See RCW 46.61.305(2) (making it an infraction to change lanes or turn without first signaling continuously for 100 feet prior to turning).
[5] Tacoma's municipal code warns drivers, "It is unlawful for any person to operate any vehicle upon the public highways of the City of Tacoma while eating any food or drinking any beverage." TACOMA, WA, CODE § 11.05.130.
[6] While Montague may have Fourth Amendment roots, it is part of a long line of cases which has been instrumental in shaping the privacy rights held by Washingtonians. Such case law takes on state significance when we ask what privacy rights Washingtonians have held.
[7] See State v. Hehman, 90 Wash.2d 45, 49, 578 P.2d 527 (1978):

While United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973) do not require the result reached herein, they do not in any way prevent our reaching this result. Decisions of the United States Supreme Court establish the minimum rights which may be accorded a defendant and yet comply with the guaranties of the United States Constitution.
[8] See, e.g., State v. Bonds, 98 Wash.2d 1, 10, 653 P.2d 1024 (1982) ("An important reason for suppressing evidence from unlawful misdemeanor arrests is to discourage `pretext' arrests for misdemeanors in order to search for evidence of more serious offenses.") (citing Hehman, 90 Wash.2d 45, 578 P.2d 527); State v. Orcutt, 22 Wash.App. 730, 737, 591 P.2d 872 (1979) ("Furthermore, the officer's failure to question the defendant about his observation in the glove box strongly suggests the discovery of the marijuana provided a pretext, rather than probable cause to search the vehicle.") (citing State v. Hehman, 90 Wash.2d 45, 578 P.2d 527).
[9] Compare Justice Talmadge's dissent (in which Justice Durham concurred) in State v. Rife which argued, "Rife's release and subsequent arrest are not necessary where, as in this case, the original stop was not pretextual...." State v. Rife, 133 Wash.2d 140, 158-59, 943 P.2d 266 (1997) (Talmadge, J., dissenting), holding superseded by statute as stated in State v. King, 89 Wash.App. 612, 623, 949 P.2d 856 (1998). The logical corollary is that if the original stop was pretextual then it would be illegal.
[10] We note if we were to depart from our holdings and allow pretextual traffic stops, Washington citizens would lose their privacy every time they enter their automobiles. The traffic code is sufficiently extensive in its regulation that "[w]hether it be for failing to signal while changing lanes, driving with a headlight out, or not giving `full time and attention' to the operation of the vehicle, virtually the entire driving population is in violation of some regulation as soon as they get in their cars, or shortly thereafter." Peter Shakow, Let He Who Never Has Turned Without Signaling Cast the First Stone: An Analysis of Whren v. United States, 24 Am. J.Crim. L. 627, 633 (1997) (footnote omitted). Thus, nearly every citizen would be subject to a Terry stop simply because he or she is in his or her car. But we have repeatedly affirmed that Washingtonians retain their privacy while in the automobile and we will do so today. See City of Seattle v. Mesiani, 110 Wash.2d 454, 456-57, 755 P.2d 775 (1988) ("From the earliest days of the automobile in this state, this court has acknowledged the privacy interest of individuals and objects in automobiles.") (citing State v. Gibbons, 118 Wash. 171, 187, 203 P. 390 (1922)).

Additionally, we note a fundamental difference between the detention of a citizen by gang patrol officers aimed at discovering evidence of crimes, which is usually "hostile," and a community caretaking stop aimed at enforcement of the traffic code. Mesiani, 110 Wash.2d at 458, 755 P.2d 775. Indeed, being ticketed for speeding is very different from being stopped by the gang patrol for full scale investigation.
[11] "Pretext is, by definition, a false reason used to disguise a real motive. Thus, what is needed is a test that tests real motives. Motives are, by definition, subjective." Patricia Leary & Stephanie Rae Williams, Toward a State Constitutional Check on Police Discretion to Patrol the Fourth Amendment's Outer Frontier: A Subjective Test for Pretextual Seizures, 69 Temp. L.Rev. 1007, 1038 (1996).
[1] A requirement that the infraction be committed in the officer's presence before a citation and notice could be issued was part of RCW 46.64.015 when enacted. Laws of 1961, ch. 12, § 46.64.015. At that time, custodial arrests for minor traffic offenses were not prohibited. The statute thus conformed to the rule that in general a warrantless misdemeanor arrest can take place only if the misdemeanor is committed in the officer's presence. To make a lawful arrest, "[t]he arresting officer must have probable cause to believe a [misdemeanor] offense has been or is being committed in his presence." State v. Montgomery, 31 Wash.App. 745, 752, 644 P.2d 747 (1982). The probable cause required must be based upon personal knowledge acquired at the time through the officer's senses or proper inferences from the testimony of the senses. Id. (citing Sennett v. Zimmerman, 50 Wash.2d 649, 651, 314 P.2d 414 (1957)). See also State v. Ortiz, 104 Wash.2d 479, 485, 706 P.2d 1069 (1985) (misdemeanor committed in presence of officers gave probable cause to arrest); State v. Morgan, 78 Wash.App. 208, 211, 896 P.2d 731 (1995) (officer who lacked reasonable grounds to believe misdemeanor was committed in his presence lacked probable cause to arrest for misdemeanor). Although custodial arrests are now generally prohibited where traffic infractions are concerned, the statute still requires either that a traffic infraction be committed in the presence of the officer (or a fellow officer, see RCW 10.31.100(6)) before a citation and notice can be issued, or that the person may be arrested pursuant to RCW 10.31.100, which requires probable cause. Given these requirements, the statutes establish a probable cause standard for traffic stops for traffic infractions. Thus, the majority's apparent belief that a reasonable articulable suspicion that a traffic infraction is being committed is sufficient to justify a warrantless seizure accordingly is misplaced. See majority at 837, 838-839.

Of course, probable cause or reasonable suspicion as to criminal activity other than a traffic infraction may also constitutionally serve as the basis for a warrantless traffic stop.
[2] Similarly, under the Fourth Amendment an officer may stop a vehicle if he or she has probable cause to believe that a traffic infraction has occurred. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).
[3] The time limitation of RCW 46.64.015 does not apply where the person stopped refuses to sign a written promise to appear in court, where the officer has probable cause to believe that the person has committed any of the offenses enumerated in RCW 10.31.100(3), and when the person is a nonresident alien being detained for a hearing under RCW 46.64.035.