[No. 24093-2-III. Division Three. April 27, 2006.]

The State of Washington, *Appellant*, v. Edward Paul Santacruz, *Respondent*.

*Steven J. Tucker, Prosecuting Attorney,* and *Kevin M. Korsmo* and *Andrew J. Metts III, Deputies,* for appellant.

*David N. Gasch* (of *Gasch Law Office*), for respondent.

¶1 SWEENEY, C.J. — The scope of a *Terry*[1] stop may be enlarged and prolonged to address suspicions unrelated to the original stop given proper circumstances. Here, police noticed Edward Santacruz's dilated pupils during a stop for an expired vehicle registration. The officer asked about the condition of his eyes. Mr. Santacruz said he had used methamphetamine earlier in the day. The court concluded the question was unrelated to the original scope of the *Terry* stop and suppressed the resulting drug evidence. The questioning here and the subsequent consensual search were easily justified by the condition of Mr. Santacruz's eyes. And we reverse the order of suppression.

## FACTS

¶2 An officer pulled Edward Santacruz over for driving with an expired vehicle registration. Mr. Santacruz admitted he had no driver's license. The officer noticed that the pupils of Mr. Santacruz's eyes were unusually dilated, but he did not smell any odor of alcohol. He asked Mr. Santacruz if he had recently "taken any type of drugs." Clerk's Papers (CP) at 13. Mr. Santacruz said he had used methamphetamine earlier in the day.

¶3 The officer then asked Mr. Santacruz if he had any drugs or paraphernalia in the car. Mr. Santacruz said no, but he did have a couple of syringes in his pocket. He consented to a quick search of his person and got out of the car. The officer found two syringes and a silver spoon with meth-

---

[1] *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

amphetamine residue. The State charged Mr. Santacruz with possession.

¶4 Mr. Santacruz moved to suppress the evidence of drugs. The trial court considered affidavits and argument of counsel and ruled that asking Mr. Santacruz about recent drug use was beyond the scope of the *Terry* stop. The focus of the stop was a defective registration. The court ruled, therefore, that only questions about registration and licensing were permissible. The court concluded that exceeding the justifiable scope of the initial stop invalidated Mr. Santacruz's admission that he used methamphetamine and his consent to the search.

¶5 The trial court then suppressed the evidence. The State appeals.

## DISCUSSION

SCOPE OF THE TRAFFIC STOP

¶6 The State contends that once Mr. Santacruz confirmed the officer's suspicion that he had used methamphetamine that day, it was reasonable and lawful to extend the scope of the stop to investigate possible driving under the influence. Mr. Santacruz contends that asking him about his dilated pupils was an improper extension of the scope of an otherwise legitimate *Terry* stop. The stop therefore had to be justified by an articulable suspicion of some further criminal activity. And dilated pupils, standing alone, were not sufficient to justify asking a question about drug use. Said another way, dilated pupils are an innocuous fact.

¶7 We review the trial court's findings of fact in a suppression motion for substantial evidence and its conclusions of law de novo. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999). Whether particular facts constitute a Fourth Amendment seizure is a question of law that we review de novo. *State v. Villarreal*, 97 Wn. App. 636, 640, 984 P.2d 1064 (1999) (citing *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997)). A traffic stop is a "seizure" for our

constitutional analysis here. *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). It is subject to the criteria of reasonableness set forth in *Terry* and *United States v. Botero-Ospina*.[2]

¶8 A *Terry* stop " 'is reasonable if the State can point to "specific and articulable facts giving rise to a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity." ' " *Villarreal*, 97 Wn. App. at 640 (quoting *Armenta*, 134 Wn.2d at 10 (quoting *State v. Gleason*, 70 Wn. App. 13, 17, 851 P.2d 731 (1993))). This means the stop must be based on more than an officer's "inarticulable hunch." *State v. Pressley*, 64 Wn. App. 591, 597, 825 P.2d 749 (1992); *State v. O'Cain*, 108 Wn. App. 542, 549, 31 P.3d 733 (2001); *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

¶9 The lawful scope of a *Terry* stop may be enlarged or prolonged as needed to investigate unrelated suspicions that crop up during the stop. *State v. Smith*, 115 Wn.2d 775, 785, 801 P.2d 975 (1990); *State v. Guzman-Cuellar*, 47 Wn. App. 326, 332, 734 P.2d 966 (1987). The officer may " 'maintain the status quo momentarily while obtaining more information.' " *State v. Williams*, 102 Wn.2d 733, 737, 689 P.2d 1065 (1984) (quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)). But, to detain a suspect beyond what the initial stop demands, the officer must be able to articulate specific facts from which it could reasonably be suspected that the person was engaged in criminal activity. *State v. Henry*, 80 Wn. App. 544, 550, 910 P.2d 1290 (1995); *State v. Tijerina*, 61 Wn. App. 626, 629, 811 P.2d 241 (1991).

¶10 The trial court here accepted Mr. Santacruz's implied premise that an officer needs more than a hunch before asking a question during an otherwise well-founded investigatory stop. While certainly an "inchoate hunch" is not sufficient to justify a stop, experienced officers are not required to ignore arguably innocuous circumstances that

---

[2] *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995).

arouse their suspicions. *State v. Kennedy*, 107 Wn. App. 972, 980, 29 P.3d 746 (2001) (citing *State v. Samsel*, 39 Wn. App. 564, 570-71, 694 P.2d 670 (1985)). They may expand the scope of the initial stop to encompass events occurring during the stop. *See State v. Belieu*, 112 Wn.2d 587, 605, 773 P.2d 46 (1989). They may ask a few questions to determine whether a further short intrusion is necessary to dispel their suspicions. *See, e.g., State v. Gonzales*, 46 Wn. App. 388, 394-95, 731 P.2d 1101 (1986).

¶11 And we judge the lawfulness of the conduct on the information known to the officer at the time. *See, e.g., Armenta*, 134 Wn.2d at 14. The action must be " 'justified at its inception' " and " 'reasonably related in scope to the circumstances' " that justified the interference. *Ladson*, 138 Wn.2d at 350 (quoting *Terry*, 392 U.S. at 20). Here, the officer's curiosity about Mr. Santacruz's condition was based on more than an inchoate hunch. Mr. Santacruz's pupils remained significantly dilated even after a flashlight was shined in his face. This was a specific, articulable reason to inquire further. Our focus here is on the officer's question, not Mr. Santacruz's reply. The officer tried to determine why Mr. Santacruz's eyes were dilated. That was a reasonable thing to do.

¶12 The trial court relied on three cases. All are distinguishable.

¶13 In *Armenta*, two men asked a uniformed officer for help with their car. The officer became suspicious because the men had large amounts of cash and gave only sketchy accounts of their recent whereabouts. *Armenta*, 134 Wn.2d at 5-6. The reviewing court held that an unlawful seizure occurred when the officer put their money in his patrol car. *Id.* at 12. The possession of large amounts of cash by a couple of Hispanic men was not, by itself, a reason to detain them. *Id.* at 13. This then vitiated their subsequent consent to be searched. *Id.* at 17.

¶14 Here, clearly a lawful seizure occurred before the officer's concern was aroused by the appearance of Mr. Santacruz's eyes.

¶15 In *Henry*, a driver had glassy eyes, moved slowly, and acted "kind of like he was in some type of a daze" when pulled over for a traffic infraction. *Henry*, 80 Wn. App. at 546. Based on this, the officer asked if the vehicle had been used in recent burglaries or drug transactions in the area. The driver said, "No." The deputy nonetheless asked for consent to search the vehicle. *Id.* The officer could not point to a specific articulable basis for his suspicion connecting this driver with burglaries or drug transactions. *Id.* at 547. And the driver's appearance had no connection with burglaries or drug transactions.

¶16 Here, the officer did not ask about drugs in the vehicle until after Mr. Santacruz said he had used some that day. The officer's initial question was prompted by specific articulable facts. Dilated pupils might well be the sign of something seriously wrong. The question was justified at its inception and reasonably within the scope of the circumstances. *Ladson*, 138 Wn.2d at 350; *Terry*, 392 U.S. at 20.

¶17 In *Tijerina*, an officer conducted a routine traffic stop; he noticed several bars of motel soap in the car's glove box. He decided not to issue a traffic citation but detained the Hispanic occupants under suspicion of drug trafficking solely because he had heard about Hispanics doing drug deals in motels. *Tijerina*, 61 Wn. App. at 628-29.

¶18 Again that is not the case here. The officer performed a lawful seizure based on an articulable suspicion of a traffic infraction. During that investigation, the officer learned that the driver had no operator's license. Eventually, he did write Mr. Santacruz a ticket. In *Tijerina*, the officer asked about guns or drugs in the vehicle based solely on ethnicity and motel soap. Here, an officer investigating vehicle registration irregularities observed that the driver's pupils were unusually dilated. This aroused his suspicion that the driver was under the influence of drugs of some kind. This broadened the scope of the stop. *Guzman-Cuellar*, 47 Wn. App. at 332. It was a reasonable extension, not an unreasonable intrusion.

¶19 The drug investigation here was within the expanded scope of the original lawful stop. We therefore reverse the suppression order.

SCHULTHEIS and KATO, JJ., concur.