González, J.
*652 ¶ 1 Hollis Blockman was charged with and convicted of unlawful possession of a controlled substance *653 with intent to deliver within 1,000 feet of a school bus stop. Blockman was discovered in Patricia Burton's apartment during a protective sweep by police, which Burton consented to, in response to a report of an assault and robbery committed in the apartment by Burton and two men.
¶ 2 Blockman contends the sweep exceeded the scope of the "protective sweep" exception to the warrant requirement under Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed. 2d 276 (1990), and therefore the trial court erred in denying his motion to suppress evidence discovered in the course of the protective sweep. However, because Burton's unchallenged consent fits within the consent exception to the warrant requirement, State v. Mathe, 102 Wash.2d 537, 541, 688 P.2d 859 (1984), we affirm.
FACTS
¶ 3 Teresa Green contacted police officers, reporting that she was assaulted and robbed while in Burton's apartment. Green identified Burton and James Marlowe as the assailants and notified police that they, along with Blockman, were likely still in the apartment.
¶ 4 Uniformed officers went to Burton's apartment to obtain more information about the alleged robbery and assault. Upon hearing why the officers were at her door, Burton invited them into her apartment, saying, " 'I can't believe [Green] called the cops' " and " '[y]ou can search everything. I don't have her money.' "[1] 1 Verbatim Report of Proceedings (VRP) (Aug. 17, 2015) at 26, 28. According to the officer's testimony, the police told Burton, " 'You don't have to let us in.' " She responded, " 'No, come on in.' " Id. at 28.
¶ 5 After entering the apartment and briefly conversing with Burton, the officers asked if there was anyone else in *654 the apartment. Burton responded that two other people were in the back bedroom. Burton did not specify whether the two people were Marlowe and Blockman, as Green had suggested earlier. *1197 ¶ 6 As the officers began the sweep, one officer proceeded in the hallway toward an open bedroom, and the officer witnessed a woman placing a $20 bill on a coffee table and Blockman holding a clear plastic bag containing a rock-like substance, which later tested positive for cocaine. As the officer announced he was with Tacoma Police, Blockman allegedly put his hands under the table rapidly. Blockman was seized and removed from the room.
¶ 7 Following his encounter with Blockman, the police officer further questioned Burton about the alleged robbery. The officer testified that he asked Burton, " 'Are you giving me consent to search?' " and told her she could limit the scope of the search and stop the search at any time. Id. at 29. Burton then signed a warrantless search consent form.
¶ 8 At trial, Blockman moved to suppress the evidence acquired during his interaction with the officers in Burton's apartment. His argument focused on the officer's failure to provide Ferrier[2] warnings before entering the house. The trial court denied the motion, ruling that the officer "had concerns for his safety due to report of at least two unknown individuals ... somewhere in the residence" and "was invited by Ms. Burton to conduct a protective sweep." Clerk's Papers (CP) at 252.[3] The trial court found the protective sweep reasonable to ensure no one would ambush the officers while they were questioning Burton.
¶ 9 On appeal, Blockman focused mainly on the warrantless protective sweep. The Court of Appeals affirmed, holding *655 that "nothing in the rationale of Buie or its progeny suggests that an arrest is an indispensable prerequisite" for conducting a protective sweep. State v. Blockman, 198 Wash. App. 34, 39, 392 P.3d 1094 (2017). Blockman appealed, and we granted review. 188 Wash.2d 1014, 396 P.3d 341 (2017).
ANALYSIS
¶ 10 This court reviews legal conclusions resulting from an order pertaining to the suppression of evidence de novo. State v. Duncan, 146 Wash.2d 166, 171, 43 P.3d 513 (2002) ; see also State v. Carneh, 153 Wash.2d 274, 281, 103 P.3d 743 (2004).
1. Ferrier did not apply to the initial contact and consent given
¶ 11 First, Ferrier warnings were not required prior to the officers entering Burton's home. 136 Wash.2d 103, 960 P.2d 927. In Ferrier, officers went to a suspect's home with the intention of searching it after receiving information regarding a possible marijuana grow operation being conducted in the home. Since the officers thought they would not be able to obtain a search warrant without including the name of their informant, the suspect's son, the officers instead devised a plan where they would do a "knock and talk" in an effort to convince Ferrier to allow them into the home. Id. at 106-07, 960 P.2d 927. The officers appeared at Ferrier's house wearing uniforms, black " 'raid jacket[s],' " and vests emblazoned with the word "police." Id. at 107, 960 P.2d 927. In light of the "knock and talk's" sometimes unavoidable, inherently coercive nature, this court held that "article I, section 7 is violated whenever the authorities fail to inform home dwellers of their right to refuse consent to a warrantless search." Id. at 118, 960 P.2d 927.
¶ 12 Later, in State v. Khounvichai, this court clarified that Ferrier warnings are required only when law enforcement officers seek entry to conduct a consensual search for *656 contraband or evidence of a crime. 149 Wash.2d 557, 566, 69 P.3d 862 (2003). These warnings are not required when the police are seeking entry into a home to question a resident in the course of investigating a crime. Id.
¶ 13 Here, the officers approached Burton's apartment as a result of Green's report *1198 of a violent robbery and assault committed by three people who were likely still in the apartment. At the time of initial contact, the officers intended only to question Burton about the alleged crime. They did not approach the apartment seeking to enter or intending to conduct a search. After Burton opened the door and saw the officers, she invited them in. 1 VRP (Aug. 17, 2017) at 28 (after officers assured Burton, " 'You don't have to let us in,' " she responded, " 'No, come on in' "). Accordingly, officers were not required to give Burton Ferrier warnings before entering the apartment since they were intending only to question her, not search her apartment without a warrant.
2. Burton's unambiguous consent to officers searching her apartment makes it unnecessary to decide the applicability of Buie in nonarrest situations
¶ 14 Second, Blockman contends that the protective sweep exception to the warrant requirement set forth in Buie is valid only if it occurs incident to arrest. 494 U.S. at 334, 110 S.Ct. 1093. Relying on its rationale in Terry[4] and Long ,[5] the Buie Court held it is constitutional for law enforcement officers to either conduct a quick-look search of the spaces immediately *657 adjoining the place of arrest without probable cause or reasonable suspicion or conduct a cursory sweep of a home incident to arrest where they have reasonable suspicion to believe the home is harboring a dangerous third person. Id.
¶ 15 We recognize that Division One's decision in this case created a split among the Court of Appeals concerning whether a Buie protective sweep warrant exception extends to nonarrest contexts. Compare State v. Blockman , 198 Wash. App. at 40, 392 P.3d 1094, with State v. Hopkins, 113 Wash. App. 954, 959-60, 55 P.3d 691 (2002). However, because the issue before us is resolved by Burton's unequivocal consent to the officer's search, it is unnecessary for us to decide the split.[6]
*1199 *658 ¶ 16 We note, however, the officer's declaration to Burton that they "always do a protective sweep" and that it is "standard procedure" to do protective sweeps was erroneous. Despite differing interpretations regarding the scope of Buie , it is clear that protective sweeps are a limited exception to the warrant requirement. In order to conduct a valid protective sweep, officers who have reasonable suspicion to believe a home may harbor a dangerous third person may conduct a cursory sweep of a home. Buie , 494 U.S. at 334, 110 S.Ct. 1093. Or, if the officers do not have probable cause or reasonable suspicion, they are permitted to conduct a quick-look search of the spaces immediately adjoining the place of arrest. Id. Here, the officer's indication of protective sweeps being standard procedure was improper and potentially misleading.
¶ 17 While courts are still undecided as to whether the protective sweep warrant exception explicated in Buie extends beyond arrest situations, this case is not the proper vehicle to reconcile the split. As a result of Burton's unambiguous consent to officers searching her apartment, it is unnecessary for us to decide the applicability of Buie in nonarrest situations.
3. Consent was given to conduct a valid protective sweep
¶ 18 Lawful consent is one of the few recognized exceptions to the warrant requirement. Mathe, 102 Wash.2d at 541, 688 P.2d 859 ("Consent to search establishes the validity of that search if the person giving consent has the authority to so consent."). Our court has set out three requirements for a valid consensual search: (1) the consent must be voluntary, (2) the consent must be granted by a party having authority to consent, and (3) the search must be limited to the scope of the consent granted. State v. Hastings, 119 Wash.2d 229, 234, 830 P.2d 658 (1992). Thus, officers must strictly abide by the scope of the proffered consent. State v. Walker, 136 Wash.2d 678, 682, 965 P.2d 1079 (1998). Accordingly, an *659 officer who receives consent to enter the entry way of a home cannot exceed the scope of the consent and begin searching the rest of the home without cause.
¶ 19 Here, the trial court entered undisputed findings of fact.[7] Most notably, finding of fact 8 states, "Officer Hayward was invited by Ms. Burton to conduct a protective sweep. Officer Hayward conducted a protective sweep to make sure no one would jump out and surprise them while he was questioning Ms. Burton. [His] gun was still in its holster when he conducted the protective sweep." CP at 252.
¶ 20 Burton, as the tenant of the apartment, had authority to consent to a search or sweep. Blockman, however, was not described as Burton's tenant or as someone who would have a valid expectation of privacy in the apartment. Knowing the officers came to her apartment to ask questions about the robbery and assault, Burton invited them in, stating, " 'You can search everything.' " 1 VRP (Aug. 17, 2015) at 52. This presentation of facts, including Burton's consent to the officers' entry and protective sweep, was unchallenged.
¶ 21 There is no testimony or evidence suggesting Burton withdrew her invitation or intended to limit the scope of her consent. Had she withdrawn her consent at any point, the outcome may be different. As mentioned earlier, a search cannot exceed the proffered consent. See State v. Bustamante-Davila , 138 Wash.2d 964, 981, 983 P.2d 590 (1999) ("To be valid, the consent must be voluntary and the search must not have exceeded the scope of consent.");
*660 Walker, 136 Wash.2d at 682, 965 P.2d 1079. Instead of revoking her consent, Burton continued to affirm it.[8] Based on *1200 these facts, Burton's consent fits within the consent exception to the warrant requirement.
CONCLUSION
¶ 22 Here, the officers were not required to provide Ferrier warnings upon their initial contact with Burton because they approached her apartment with the intent to question her about the alleged crime, not with the intention to search her home. Furthermore, although the issue of whether the protective sweep exception to the warrant requirement, set forth in Buie, extends to nonarrest encounters is still undecided, this is not the proper case to reconcile the confusion. Ultimately, Burton unambiguously consented to the sweep; a fact that was uncontested on appeal. Burton's unchallenged, unequivocal consent justified the protective sweep at issue. Therefore, we affirm the Court of Appeals.
WE CONCUR:
Fairhurst, C.J.
Johnson, J.
Madsen, J.
Owens, J.
Stephens, J.
Yu, J.

Officer Hayward conveyed this account at trial; Burton did not testify at trial.

State v. Ferrier, 136 Wash.2d 103, 960 P.2d 927 (1998).

The officer then asked if he could take a look, stating that they "always do a protective sweep" and that it is "standard procedure" for officers to conduct protective sweeps. 1 VRP (Aug. 17, 2017) at 26, 46. It is debatable whether the officer's incorrect assertion of the applicability of protective sweeps impaired Burton's consent in any meaningful way. However, no one has challenged the trial court's conclusion of facts regarding Burton's consent.

Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). "Stop-and-frisks" are not-and could not practically be-subject to Fourth Amendment's warrant requirement; rather, they must be analyzed under the Fourth Amendment's general prescription against unreasonable searches and seizures. Id. at 20, 88 S.Ct. 1868. Officers need to have only reasonable suspicion, not probable cause, that defendant may be involved in criminal activity and may be armed. Id. at 24, 27, 30-31, 88 S.Ct. 1868.

Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed. 2d 1201 (1983). It is constitutional for an officer to search a passenger compartment where weapons could be hidden when the officer has reasonable suspicion to believe the person being stopped is dangerous and might have immediate access to weapons. Id. at 1049, 103 S.Ct. 3469.

We also recognize the split among the federal courts. Several cases have held that the protective sweep warrant exception are per se invalid in nonarrest situations. For courts refusing to expand Buie to nonarrest situations, there is significant focus on how the expansion of the protective sweep doctrine could lead to drastic erosion of individual rights that probable cause and warrant requirements are meant to safeguard. George Dery & Michael J. Hernandez, Turning a Government Search into a Permanent Power: Thorton v. United States and the "Progressive Distortion" of Search Incident to Arrest, 14 Wm. & Mary Bill Rts. J. 677, 680 (2005) ("In order ... to ensure that the Fourth Amendment is upheld even under such stressful circumstances, a detached and neutral magistrate has to be placed between the individual and the police aiming to intrude on his or her rights.").
Considering the confrontational nature of arrests, the Tenth Circuit in United States v. Torres-Castro held protective sweeps are valid only when pursuant to an arrest. 470 F.3d 992, 997-98 (10th Cir. 2006) ; see also United States v. Davis, 290 F.3d 1239, 1242 n.4 (10th Cir. 2002) ; United States v. Smith, 131 F.3d 1392, 1396 (10th Cir. 1997). Similarly, the Ninth Circuit held in United States v. Reid that protective sweeps should not be justified in the absence of an arrest or lack of suspicion regarding the possible presence of a dangerous third party. 226 F.3d 1020, 1027 (9th Cir. 2000).
Meanwhile, other courts have extended the protective sweep doctrine to nonarrest situations. In United States v. Daoust, the First Circuit reasoned that the defendant's violent history, known gun possession, and residence in an isolated cabin provided the officers with the reasonable suspicion required to conduct the protective sweep. 916 F.2d 757, 759 (1st Cir. 1990) ; see also United States v. Martins, 413 F.3d 139, 150 (1st Cir. 2005). Considering the adversarial nature and risk of ambush in a suspect's home, the Ninth Circuit also held that the law enforcement's entry was pursuant to lawful consent and the subsequent protective sweep was valid. United States v. Garcia, 997 F.2d 1273, 1281-82 (9th Cir. 1993) ; see also Leaf v. Shelnutt, 400 F.3d 1070, 1087 (7th Cir. 2005) ; United States v. Gould, 364 F.3d 578, 584 (5th Cir. 2004), abrogated by Kentucky v. King, 563 U.S. 452, 464, 131 S.Ct. 1849, 179 L.Ed. 2d 865 (2011).

Findings of fact were entered by the court on June 16, 2016, after Blockman filed his initial appeal. The CrR 3.5 and 3.6 hearings were held on August 17, 2015. As noted by the Court of Appeals, written findings and conclusions are to be entered after a suppression hearing. However, the Court of Appeals cites State v. Cruz, 88 Wash. App. 905, 907 n.1, 946 P.2d 1229 (1997), stating, "In some cases we have accepted findings that are entered after a case is appealed as long as there is no prejudice to the defendant. That is true here." Blockman , 198 Wash. App. at 36, 392 P.3d 1094 (citation omitted). Blockman's counsel confirmed at oral argument that error was not assigned to the trial court's findings of fact. Wash. State Supreme Court oral argument, State v. Blockman, No. 94273-1 (Nov. 14, 2017), at 4 min., 54 sec. to 6 min., 5 sec., Washington State's Public Affairs Network, http://www.tvw.org.

According to Officer Hayward's testimony, Burton opened the door and invited the officers into the living room, saying, " 'I can't believe she called the cops' " and " '[y]ou can search everything. I don't have her money.' " 1 VRP (Aug. 17, 2015) at 41, 28. Hayward testified that initially he informed Burton, " 'You don't have to let us in,' " to which she responded, " 'No, come on in.' " Id. at 28. Later, Burton said, "You can search everywhere." Id. at 29 (explaining that Burton did not limit her scope and signed a consent to search without a warrant form).