# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50964-4-II |
| Respondent, | |
| v. | |
| NOEL WICHMAN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found Noel Wichman guilty of possession of methamphetamine with intent to deliver[1] and first degree criminal trespass.[2] Wichman appeals her convictions, arguing that the prosecutor committed misconduct by asking improper questions that bolstered the State's theory of the case and by making improper statements during closing arguments. Wichman further argues that she received ineffective assistance from her trial counsel when he failed to move to suppress evidence found during a consensual search and failed to object to the prosecutor's purported misconduct.

We hold that the prosecutor neither bolstered nor committed flagrant and ill-intentioned prosecutorial misconduct, and that Wichman's trial counsel did not provide ineffective assistance. Accordingly, we affirm Wichman's convictions.

_____

[1] RCW 69.50.401(2)(b).

[2] RCW 9A.52.070(1).

FACTS

A woman called 911 to report two individuals inside her neighbor's vacant house whom she believed were there without permission. Law enforcement responded, and found Noel Wichman and Shane Vandervort hiding in a closet in the house. Jefferson County Sheriff's Deputy Brandon Przygocki placed Wichman in handcuffs and patted her down for weapons. Jefferson County Sheriff's Deputy Adam Newman contacted Wichman who stated she had not taken anything from the house.

Wichman's vehicle was parked in the carport of the house. Deputy Przygocki obtained Wichman's consent to search her vehicle. He used a card that explained *Ferrier*[3] rights to advise Wichman that she could refuse, restrict, limit, or stop the search at any time. Deputy Przygocki and Detective Brett Anglin searched Wichman's vehicle, including a backpack, a zippered pouch, and a purse inside the vehicle. The search uncovered: suspected methamphetamine, a digital scale, one zip lock bag with white residue, another zip lock bag containing a large chunk of a crystalline substance, cash, a check made by Bettina McMaster,[4] winning scratch-off lottery tickets, and five cell phones.

At trial, witnesses testified to the above facts. Additionally, the prosecutor asked Deputy Przygocki, Deputy Newman, and Detective Anglin, if they knew of or met Wichman prior to the facts in this case, and how long they had known her. All three testified to knowing Wichman prior to this case. Deputy Newman also testified that he was unfamiliar with Vandervort.

---

[3] *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998).

[4] McMaster was an acquaintance of Wichman.

Wichman testified that she went inside a house that was not hers, and law enforcement found her hiding in a closet. Wichman admitted to understanding her rights to refuse and to stop the search of her vehicle. She stated that the drugs belonged to Vandervort. She testified that Vandervort needed to make some money, and that he needed to "sell some methamphetamines." 2 Verbatim Report of Proceedings (VRP) at 321. The following exchange took place:

[Prosecutor]: All right. So you're prompted to go to [McMaster's] for what reason? You need money? Or you just want to make friends? Have a drink? What are you doing going over there?

[Wichman]: Well, [Vandervort] had mentioned that he needed to make some money. He did not tell me prior to any of this that he had drugs with him. He said he needed to sell some methamphetamines. Well, everybody knows—it's known, [McMaster] likes to party, okay? So I was like, all right, we can go over to this person's house.

[Prosecutor]: All right. So you essentially made the connection for Mr. Vandervort, who was the seller, with the potential—

[Wichman]: I told him—no.

[Prosecutor]: With the purchase? Or Ms. McMaster?

[Wichman]: I'm not—no, no. He said—what he said to me—and I said I might know somebody. So I took him over there and he talked to her. I had nothing to do with it after that.

[Prosecutor]: Okay. Okay. But before this he would have had no way to know to go there, without you telling him, correct?

[Wichman]: Yes.

[Prosecutor]: Okay. And so did you just walk over there on a hunch that she'd want to buy some drugs?

[Wichman]: No. We drove over there.

[Prosecutor]: Okay. And did you—did you make any arrangements beforehand? Or just show up and thought maybe this will work out?

3

[Wichman]: I don't know what I was thinking. I was hoping it might have worked out. . . .

. . . .

[Prosecutor]: Okay. So in the—so all you did was connect him with Ms. McMaster so he could sell her drugs?

[Wichman]: I guess if it's—that's how y—ou're going to put it.

2 VRP at 321-323.

After both sides rested, the trial court instructed the jury on reasonable doubt and accomplice liability based on the 11 *Washington Pattern Jury Instructions*: *Criminal*, 4.01 at 93 (4th ed. 2016) (WPIC) and WPIC 10.51, at 234. During rebuttal closing argument, the prosecutor made several remarks Wichman now challenges. The prosecutor stated:

> And you know, it's not any one piece of evidence. This case is like a big puzzle. You hear bits and pieces from different people. Some are—you may decide are important and some are not important to your decision. That's going to be up to you.
>
> . . . .
>
> . . . We talked about the entire comparison and consideration of the evidence. The idea that this is a puzzle. Some things might be important to you, or not. The idea is a conceivable picture of the puzzle with a few missing pieces (inaudible). We do that all [the] time. Three missing pieces, it's still a butterfly, right? You don't need to hear from the owner from the house. There's other things you may decide are important, or not important. It doesn't mean that you can't make a decision.

3 VRP at 407, 411. The prosecutor also stated:

> You'll have the reasonable doubt instruction and that tells you that a reasonable doubt is one for which a reason exists and may arise from evidence or lack of evidence. A reason. Something reasonable. Not maybe, possibly, could have been.

. . . .

So there must be a reason for the doubt. Not just a wonder or a possibility. Maybe a piece of evidence you can point to and say, you know what? I think that points to innocence. Or, we didn't hear about this and that's an absolute must for me in this case. Something that you can point to that's reasonable and for which there is a reason.

3 VRP at 412-13. The prosecutor finished by stating, "The puzzle in its form as it goes to you is that the defendant is guilty of both trespassing in the house . . . and . . . she was in possession of the methamphetamine that was in her car, and had the intent that it be distributed." 3 VRP at 413.

The jury found Wichman guilty of possession of methamphetamine with intent to manufacture or deliver and first degree criminal trespass. Wichman appeals.

ANALYSIS

Wichman argues that the prosecutor committed misconduct by "bolstering [the State's] theory" of the case and by making improper statements during closing arguments. Br. of Appellant at 34. Wichman further argues that she received ineffective assistance from her trial counsel when he failed to move to suppress evidence found during a consensual search and failed to object to the prosecutor's alleged misconduct. We hold that the prosecutor did not bolster and did not commit flagrant and ill-intentioned prosecutorial misconduct, and that Wichman's trial counsel did not provide ineffective assistance.

I. PROSECUTORIAL MISCONDUCT

Wichman argues that the prosecutor committed misconduct by bolstering, telling the jury it needed to have a specific reason for reasonable doubt, and using a jigsaw puzzle analogy. We hold that the prosecutor did not improperly bolster. Further, we hold that some of the remarks

during closing argument were improper, but that a curative instruction would have cured any prejudice, and that the other comments were proper. As a result, Wichman's prosecutorial misconduct arguments fail.

To establish prosecutorial misconduct, a defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). If a defendant establishes that the prosecutor's conduct was improper, we will then determine whether such conduct prejudiced the defendant. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Where, as here, a defendant fails to object to alleged prosecutorial misconduct at trial, she is deemed to have waived any error unless she shows the misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. To meet this heightened standard, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455).

A.      *Prosecutor Did Not Improperly Bolster*

Wichman argues that the prosecutor impermissibly "bolstered" its theory of the case when questioning law enforcement witnesses about their familiarity with Wichman. Specifically, Wichman argues that asking law enforcement how long they had known her "bolstered" the theory of the State's case that the items in her car belonged to her as opposed to Vandervort. Wichman seems to argue that officer testimony stating that they knew Wichman violated her right to a fair trial because the testimony constituted bolstering. We disagree.

6

"Bolstering" refers, not to a party's theory of a case, but to a witness's credibility or testimony. *See State v. Bourgeois*, 133 Wn.2d 389, 400-01, 945 P.2d 1120 (1997). The general rule is that a party cannot bolster a witness's testimony unless an opposing party has attacked that witness's credibility. *Bourgeois*, 133 Wn.2d at 400-01. However, following impeachment of a witness, a party may bolster the witness's credibility to rehabilitate the characteristic or testimony attacked. *Bourgeois*, 133 Wn.2d at 401; ER 608.

Here, Wichman does not explain how bolstering occurred. She appears to claim that by eliciting testimony that police officers knew Wichman and not Vandervort, the State was bolstering. Wichman does not cite to any case that defines bolstering as enhancing a *theory of a case*. As described above, the prohibition against bolstering refers to a witness's credibility. Wichman does not explain whose testimony the State was bolstering, or how these questions could possibly have bolstered testimony.

Even assuming the prosecutor's questions were somehow prejudicial, prejudice alone does not constitute bolstering, which is Wichman's argument on appeal. Because Wichman fails to show how the questions were bolstering, her argument fails.

B.      *Specific Reason for Reasonable Doubt Was Improper, but Waived*

Wichman argues that the prosecutor improperly shifted the burden of proof during closing arguments by arguing that the jury must be able to articulate a reason if it finds a reasonable doubt. We hold that this argument was improper, but not flagrant and ill-intentioned, thus Wichman has waived this issue.

In reviewing a prosecutor's comments during closing argument, we look to the context of the total argument, the issues presented in the case, the evidence addressed in the argument, and the jury instructions.  *State v. Jackson*, 150 Wn. App. 877, 883, 209 P.3d 553 (2009).  A prosecutor has wide latitude to argue reasonable inferences from the evidence.  *Thorgerson*, 172 Wn.2d at 453.  A prosecutor cannot, however, make arguments that shift or misstate the State's burden to prove a defendant's guilt beyond a reasonable doubt.  *Thorgerson*, 172 Wn.2d at 453; *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014).  A prosecutor may not make statements that are unsupported by the evidence and unfairly prejudicial to the defendant.  *State v. Boehning*, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

A prosecutor shifts the burden to the defendant by arguing that the jury must be able to articulate a specific reason to doubt the defendant's guilt.  *Emery*, 174 Wn.2d at 760.  In *Emery*, the prosecutor argued,

> [I]n order for you to find the defendant not guilty, you have to ask yourselves or you'd have to say, quote, I doubt the defendant is guilty, and my reason is blank. A doubt for which a reason exists. If you think that you have a doubt, you must fill in that blank.

174 Wn.2d at 750-51 (alteration in original).  The Supreme Court concluded the statement "improperly implies that the jury must be able to articulate its reasonable doubt by filling in the blank," which is "inappropriate because the State bears the burden of proving its case beyond a reasonable doubt, and the defendant bears no burden."  *Emery*, 174 Wn.2d at 760.  The Court observed that the argument "subtly shifts the burden to the defense."  *Emery*, 174 Wn.2d at 760.  But because any potential confusion resulting from the comment could have been cured if the defendant had objected and the trial court had reiterated the proper burden of proof, thereby

8

eliminating any potential prejudice, the court held reversal was not warranted. *Emery*, 174

Wn.2d at 763-64.

Here, the prosecutor stated:

You'll have the reasonable doubt instruction and that tells you that a reasonable doubt is one for which a reason exists and may arise from evidence or lack of evidence. A reason. Something reasonable. Not may, possibly, could have been.

. . . .

So there must be a reason for the doubt. Not just a wonder or a possibility. Maybe a piece of evidence you can point to and say, you know what? I think that points to innocence. Or, we didn't hear about this and that's an absolute must for me in this case. Something that you can point to that's reasonable and for which there is a reason.

3 VRP at 412-13. By stating that the jury needed to point to a specific reason to find Wichman

not guilty, and implying that the jury needed to articulate that reason, the prosecutor wrongly

shifted the burden to Wichman. Accordingly, the prosecutor's remarks regarding a specific

reason for doubt were improper.

However, because Wichman did not object to this argument, it is waived unless she

shows that a curative instruction could not have cured the resulting prejudice. *Emery*, 174

Wn.2d at 760-61.

Although the prosecutor's remarks on articulating a specific reason for the jury's

reasonable doubt were improper, Wichman fails to show that an instruction could not have cured

any prejudice. Moreover, the trial court gave the jury the Washington pattern jury instruction for

reasonable doubt. This instruction states:

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.

Clerk's Papers (CP) at 60.

Wichman neither argues nor shows that any potential jury confusion stemming from the prosecutor's remarks could not have been cured by an additional clarifying instruction. Because the prosecutor's argument was not so flagrant or ill-intentioned that a curative instruction could not have cured any prejudice, we hold that Wichman has waived this issue.

C.    *Jigsaw Puzzle Analogy Was Not Improper*

Wichman also argues that the prosecutor improperly lowered the burden of proof during closing arguments by using a jigsaw puzzle analogy. We hold that this argument was not improper.

We examine the State's use of the jigsaw puzzle analogy on a case-by-case basis, considering the context of the argument as a whole. *State v. Fuller*, 169 Wn. App. 797, 825, 282 P.3d 126 (2012). A puzzle analogy is improper when it is used to quantify the number of pieces or percent of the puzzle that would be enough to meet the beyond a reasonable doubt standard. *Lindsay*, 180 Wn.2d at 435-36; *State v. Johnson*, 158 Wn. App. 677, 685, 243 P.3d 936 (2010). Thus, the prosecutor in *Lindsay* engaged in misconduct when he stated, "'You could have 50 percent of those puzzle pieces missing and you know it's Seattle.'" 180 Wn.2d at 434.

However, jigsaw puzzle analogies may be proper if they are not used to improperly quantify the standard of proof. *See State v. Curtiss*, 161 Wn. App. 673, 700-01, 250 P.3d 496 (2011). A prosecutor did not engage in misconduct when stating, "'There will come a time when you're putting that puzzle together, and even with pieces missing, you'll be able to say, with some certainty, beyond a reasonable doubt what that puzzle is.'" *Curtiss*, 161 Wn. App. at 700. The crux of puzzle analogies is whether the prosecutor quantifies "the number of pieces and percentage of completion required for reasonable doubt" or whether the prosecutor merely makes "general reference to being able to discern the subject of a puzzle with some pieces missing." *Lindsay*, 180 Wn.2d at 435.

Here, the prosecutor stated, "This case is like a big puzzle. You hear bits and pieces from different people. Some are—you may decide are important and some are not important to your decision. That's going to be up to you." 3 VRP at 407.

The prosecutor also argued:

> The idea that this is a puzzle. Some things might be important to you, or not. The idea is a conceivable picture of the puzzle with a few missing pieces (inaudible). We do that all [the] time. Three missing pieces, it's still a butterfly, right? You don't need to hear from the owner from the house. There's other things you may decide are important, or not important. It doesn't mean that you can't make a decision.
>
> . . . .
>
> . . . The puzzle in its form as it goes to you is that the defendant is guilty.

3 VRP at 411, 413. Although the prosecutor stated "three missing pieces," she did not impermissibly quantify the reasonable doubt standard. Because the prosecutor did not use a percentage or tell the jurors how many pieces were in the total puzzle, three pieces could

11

represent a varied range of portions of the total puzzle. The prosecutor did not state that the jury could determine the puzzle was a picture of a butterfly with a specific percentage of the pieces missing. Rather, the prosecutor's remarks are more like those in *Curtiss*, where the prosecutor noted that there may be some missing pieces yet the State had met its burden beyond a reasonable doubt. *See Curtiss*, 161 Wn. App. at 700.

However, even if the puzzle remarks were improper, Wichman must still show the remarks were flagrant and ill-intentioned. *See Emery*, 174 Wn.2d at 760-61. Wichman does not claim or establish that any potential prejudice or jury confusion stemming from the prosecutor's remarks could not have been eliminated by an additional clarifying instruction if she had objected. Because the prosecutor's argument was not so flagrant or ill-intentioned that a curative instruction could not have cured any prejudice, Wichman has waived this argument by failing to object.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Wichman argues that she received ineffective assistance when trial counsel failed to move to suppress evidence seized from a consensual search and when he failed to object to the prosecutor's bolstering and closing argument. We disagree.

A.  *Legal Principles*

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prove that she received ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient

and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Because both prongs must be met, a failure to show either prong will end the inquiry. *State v. Classen*, 4 Wn. App.2d 520, 535, 422 P.3d 489 (2018).

To establish deficient performance, a defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Trial strategy and tactics cannot form the basis of a finding of deficient performance. *Grier*, 171 Wn.2d at 33. Counsel is not deficient for failing to make requests that would be unsuccessful. *State v. Denny*, 173 Wn. App. 805, 811, 294 P.3d 862 (2013). To establish prejudice, the defendant must show a reasonable probability that, absent counsel's unprofessional errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34.

To show counsel was ineffective for failing to move to suppress, a defendant must show that such a motion would have likely been granted. *State v. Hamilton*, 179 Wn. App. 870, 882, 320 P.3d 143 (2014). Where the defendant claims ineffective assistance based on counsel's failure to challenge the admission of evidence, the defendant must show (1) an absence of legitimate strategic or tactical reasons supporting the failure to object; (2) that an objection likely would have been sustained; and (3) that the trial's result would have differed had the evidence not been admitted. *State v. McFarland*, 127 Wn.2d 322, 336-37, 899 P.2d 1251 (1995); *State v. Hendrickson*, 129 Wn.2d 61, 80, 917 P.2d 563 (1996).

B.      *Motion To Suppress Evidence from a Consensual Search Would Not Have Been Granted*

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, a law enforcement officer generally cannot search a person without

13

a warrant unless an exception applies. *State v. Vanhollebeke*, 197 Wn. App. 66, 71, 387 P.3d 1103 (2016). One such exception is consent to search. *State v. Blockman*, 190 Wn.2d 651, 658, 416 P.3d 1194 (2018). For a valid consensual search: "(1) the search must be voluntary, (2) the consent must be granted by a party having authority to consent, and (3) the search must be limited to the scope of consent granted." *Blockman*, 190 Wn.2d at 658. The owner of a vehicle may consent to its search. *State v. Vanhollebeke*, 190 Wn.2d 315, 324, 412 P.3d 1274 (2017).

Here, Wichman cannot show that a motion to suppress the evidence discovered in the search would have been granted. Wichman gave Deputy Przygocki consent to search her vehicle. Deputy Przygocki used his "*Ferrier* card" that listed Wichman's rights regarding consent to search, and advised Wichman that she could refuse the search, restrict or limit it, and that she could stop the search at any time. Further, Wichman testified that she understood her rights to refuse the search or to stop it. Despite understanding that she could refuse the search or stop the search, Wichman consented to the search. Deputy Przygocki's search was limited to Wichman's consent. On appeal, Wichman fails to show that an objection to evidence resulting from the search would have been sustained had one been raised. Accordingly, we hold that Wichman's trial counsel was not ineffective for failing to move to suppress the evidence obtained during the consensual search.

C.     *Trial Counsel Was Not Ineffective by Not Objecting to Prosecutor's Remarks or Questions*

Wichman also argues that trial counsel's failure to object to the prosecutor's actions was ineffective assistance of counsel. We disagree.

14

As stated above, Wichman must show both deficient performance and prejudice. *See Classen*, 4 Wn. App.2d at 535.

Here, Wichman is unable to show prejudice. To establish prejudice, Wichman must show a reasonable probability that, absent counsel's unprofessional errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. Although Wichman's notice of appeal encompasses both convictions, all her arguments on appeal relate only to her possession of methamphetamine with intent to deliver conviction. Regarding that conviction, the trial court gave the standard accomplice liability jury instruction.[5] Wichman acknowledged during her testimony that she set up the methamphetamine deal between McMaster and Vandervort. Because Wichman admitted to knowing that Vandervort possessed methamphetamine, that he wanted to sell those drugs, and then admitted to helping him accomplish the sale, there is no reasonable probability that, absent counsel's failure to object, the proceedings would have ended differently.

Further even assuming any of Wichman's arguments relate to the trespass conviction, she has not shown a reasonable probability that but for counsel's errors, her criminal trespass conviction would have a different result. Wichman testified that she went inside a house that was not hers, and law enforcement found her hiding in a closet. As a result, we hold that Wichman's claims fail.

We affirm.

---

[5] In relevant part, the instruction said, "A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either: (1) solicits, commands, encourages, or requests another person to commit the crime; or (2) aids or agrees to aid another person in planning or committing the crime." CP at 77.

No. 50964-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick J.

We concur:

_____
Lee, A.C.J.

_____
Cruser, J.