# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>ALLIXZANDER DEVELL HARRIS,<br><br>                    Petitioner. | No. 51481-8-II<br><br><br><br>UNPUBLISHED OPINION |

CRUSER, J. — Allixzander D. Harris seeks relief from personal restraint on his conviction for six counts of promoting commercial sexual abuse of a minor with aggravating factors, one count of tampering with a witness, and one count of second degree promoting prostitution. Harris claims that he received ineffective assistance of counsel when his counsel withdrew his CrR 3.6 motion to suppress evidence. Harris contends that the motion would have been granted because there was a pretextual traffic stop, a prolonged or unlawful detention, a coerced consent to search, an illegal search, and a tainted probable cause affidavit. We conclude that Harris did not receive ineffective assistance of counsel because he has not shown that a motion to suppress would likely have been granted. Accordingly, we deny Harris's petition.

FACTS

I. HARRIS'S ARREST

On December 28, 2012, Bremerton police took a report from L.P. L.P. reported that Harris[1] and another individual raped her from December 26 through December 28. She reported that the rapes occurred at two motels, one in Tacoma and one in Bremerton. On December 31, Sergeant Randy Plumb and Detective Martin Garland confirmed that Harris rented the rooms at the Bremerton motel as L.P. had reported.

Sergeant William Endicott worked for the Bremerton Police Department. On December 31, he had a conversation with Sergeant Plumb in which he learned about the ongoing investigation regarding Harris. Plumb asked Endicott to alert him if any officers came into contact with Harris. That same day, Officer Jonathan Meador conducted a traffic stop involving Harris. Officer Inklebarger had called Meador to the area "for a subject that may or may not have been suspended, but had expired tabs on the vehicle." 8 Verbatim Report of Proceedings (VRP) at 1098. Meador pulled in behind the car and noticed that it had expired tabs. The windows were tinted so he could not see the driver. He stopped the car and made contact with the driver, Harris, who told Meador that his license was suspended. Meador detained Harris. Meador ran Harris's information and discovered that he "came back [driving with license suspended (DWLS)] 3rd degree." Br. of Resp't, App. L at 2. Inklebarger arrived at the scene and placed Harris in custody. Endicott traveled to the scene and informed Plumb of the stop and that Harris was the driver.

---

[1] The report refers to Harris as "Allixzander Park," which is an alias he used.

Sergeant Plumb asked Sergeant Endicott if Harris had a cell phone and a laptop. Endicott then asked Harris if he could look inside his car. Harris "assured [Endicott] there was nothing illegal in there and that [Endicott] could look." 9 VRP at 1185. Endicott looked inside Harris's car and discovered a cell phone and a laptop inside a backpack. The police then impounded Harris's car.

Sergeant Plumb later obtained a warrant to search Harris's car and the items discovered within it. The cell phone and laptop contained evidence that Harris was involved in promoting the commercial sexual abuse of minors.

## II. CrR 3.6 MOTION WITHDRAWN

The State charged Harris with six counts of promoting commercial sexual abuse of a minor with aggravating factors, one count of tampering with a witness, and one count of second degree promoting prostitution.[2]

Harris's attorney filed a CrR 3.6 motion to suppress the evidence seized following the stop, arguing that the stop was pretextual. The State responded by arguing that the stop was justified because Officer Meador had a reasonable suspicion that Harris had expired tabs and that he was driving with a suspended license.

Before the scheduled CrR 3.6 hearing, Officer Inklebarger sent an e-mail to the prosecutor stating,

> I knew [special operations group (SOG)] was looking for [Harris] and knew the vehicle he was driving. I saw the vehicle at the old [Bremerton] Motel a few days prior but not Harris. We also knew the vehicle was expired because I drove by and ran the license. We set up for it to leave and I believe I saw [Harris] get into the

---

[2] The State also charged Harris with second degree possession of depiction of a minor engaged in sexually explicit conduct that the court later dismissed without prejudice.

driver's seat when it left. It went Officer Meador's direction and he conducted the stop. We all [k]new SOG was looking for him because they put the information out at an earlier date.

Personal Restraint Petition (PRP), Attach. at 13.

At the hearing, Harris's attorney withdrew his CrR 3.6 motion. He said that he spoke to Officer Inklebarger, who told him that "his law community was familiar with that vehicle because they had seen it and been in contact with it over the previous days, or . . . a week." VRP (July 11, 2014) at 4. Inklebarger was familiar with the car and knew the tabs were expired. Harris's attorney informed the court that he was withdrawing the motion because he believed he did not have any evidence to challenge the reasonableness of the stop.

### III. CONVICTION AND APPEAL

A jury found Harris guilty on all counts and the court imposed an exceptional sentence. Harris appealed his conviction and sentence. In an unpublished opinion, we affirmed Harris's conviction but remanded to the trial court to conduct an individualized inquiry on Harris's ability to pay discretionary legal financial obligations (LFOs). *State v. Harris*, noted at 194 Wn. App. 1017 (2016). On October 30, 2017, Harris filed this timely PRP.

### ANALYSIS

#### STANDARD OF REVIEW

A petitioner may seek relief through a PRP when he believes he is under unlawful restraint. RAP 16.4 (a)-(c). In order for a petitioner to be entitled to collateral relief through a PRP, the petitioner must prove error by a preponderance of the evidence, and he must prove he suffered prejudice as a result of the error. *In re Pers. Restraint of Crow*, 187 Wn. App. 414, 420-21, 349 P.3d 902 (2015).

4

A petitioner asserting constitutional error must demonstrate that the error resulted in actual and substantial prejudice. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010). A petitioner who demonstrates that he received ineffective assistance of counsel has shown actual and substantial prejudice. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012). When a petitioner has made the required showing, we must grant the PRP. *Monschke*, 160 Wn. App. at 489.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Harris claims that his trial counsel's performance was deficient because he withdrew his CrR 3.6 motion to suppress. He makes a number of claims in support of this argument, which we address below.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). A defendant claiming ineffective assistance of counsel bears the burden of establishing that (1) counsel's performance was deficient and (2) the deficient performance resulted in prejudice. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Defense counsel's representation is deficient if it falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). There is a strong presumption that defense counsel's conduct was not deficient. *Grier*, 171 Wn.2d at 33.

"We apply the same prejudice standard to ineffective assistance claims brought in a personal restraint petition as we do on appeal." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538,

397 P.3d 90 (2017). To show prejudice, the defendant must show that there is reasonable probability that, but for the deficiency, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. In the context of a suppression motion, the defendant must establish that a motion to suppress would likely have been granted. *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995).

A. PRETEXTUAL STOP

Harris argues that his counsel was deficient for withdrawing the CrR 3.6 motion because he contends that the stop of his car, which led to his arrest and the search of his car, was pretextual. We disagree.

1. PRINCIPLES OF LAW

In general, the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit searches and seizures absent a warrant or an exception to the warrant requirement. *State v. Ladson*, 138 Wn.2d 343, 348-50, 979 P.2d 833 (1999). A traffic stop is a seizure and must be reasonable. *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986). "Warrantless seizures are per se unreasonable, unless an exception to the warrant requirement applies." *State v. McLean*, 178 Wn. App. 236, 244, 313 P.3d 1181 (2013). The State bears the burden of showing that an exception to the warrant requirement applies. *Ladson*, 138 Wn.2d at 350.

There are several recognized exceptions to the warrant requirement including consent, exigent circumstances, inventory searches, searches incident to arrest, plain view, and investigative

*Terry*[3] detentions. *Ladson*, 138 Wn.2d at 349. *Terry* applies to stops based on traffic violations. *State v. Duncan*, 146 Wn.2d 166, 173-74, 43 P.3d 513 (2002). An officer can conduct a traffic stop if they have a reasonable articulable suspicion that a traffic infraction or criminal activity has occurred or is occurring. *State v. Chacon Arreola*, 176 Wn.2d 284, 292-93, 290 P.3d 983 (2012); *State v. Quezadas-Gomez*, 165 Wn. App. 593, 603, 267 P.3d 1036 (2011).

Under article I, section 7, pretextual traffic stops are unconstitutional. *Ladson*, 138 Wn.2d at 353, 358. A traffic stop is pretextual when an officer relies on some legal authorization as "a mere pretext to dispense with [a] warrant when the true reason for the seizure is not exempt from the warrant requirement." *Ladson*, 138 Wn.2d at 358. The *Ladson* court reasoned, "[T]he problem with a pretextual traffic stop is that it is a search or seizure which cannot be constitutionally justified for its true reason (i.e., speculative criminal investigation), but only for some other reason (i.e., to enforce traffic code) which is at once lawfully sufficient but not the real reason." 138 Wn.2d at 351. When determining whether a stop is pretextual, we consider the totality of the circumstances, including the subjective intent of the officer and the objective reasonableness of the officer's behavior. *Ladson*, 138 Wn.2d at 358-59. "When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." *Ladson*, 138 Wn.2d at 359.

A traffic stop based on dual or "mixed" motives is not necessarily pretextual. *Arreola*, 176 Wn.2d at 297. "[A] traffic stop is not unconstitutionally pretextual so long as investigation of either criminal activity or a traffic infraction (or multiple infractions), for which the officer has a

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

reasonable articulable suspicion, is an actual, conscious, and independent cause of the traffic stop." *Arreola*, 176 Wn.2d at 297. Additionally, when officers have probable cause to arrest a suspect for a felony unrelated to a traffic offense, they may stop him when he is driving. *See Quezadas-Gomez*, 165 Wn. App. at 602-03. "Probable cause exists where the facts and circumstances are within the officer's knowledge and the facts and circumstances are such that the officer has reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that an offense has been committed." *State v. Racus*, 7 Wn. App. 2d 287, 301, 433 P.3d 830, *review denied*, 441 P.3d 828 (2019).

2. THE STOP WAS NOT PRETEXTUAL

Harris contends that the traffic stop was pretextual because Officer Inklebarger knew that Sergeant Plumb was looking for Harris but that he did not have "authority of law nor an exception to the warrant requirement," so he waited for Harris to commit a traffic infraction in order to justify a stop. PRP at 16. Harris primarily relies on Inklebarger's e-mail, which said,

> I knew SOG was looking for [Harris] and knew the vehicle he was driving. I saw the vehicle at the old [Bremerton] Motel a few days prior but not Harris. We also knew the vehicle was expired because I drove by and ran the license. We set up for it to leave and I believe I saw [Harris] get into the driver's seat when it left. It went Officer Meador's direction and he conducted the stop. We all [k]new SOG was looking for him because they put the information out at an earlier date.

PRP, Attach. 13.

He also relies on the fact that Sergeant Plumb notified Sergeant Endicott of the ongoing investigation of Harris and was told to alert Plumb if any officers came into contact with Harris. He contends that the stop was pretextual because the officers stopped Harris only to further Plumb's investigation. He further contends that this error prejudiced him because if the motion to

suppress had been successful, the State's case would have been weakened given all the evidence the officers obtained from the stop.

The stop of Harris's car was not pretextual. Officer Meador stopped Harris because Officer Inklebarger called him "to stand by for a vehicle [that] had expired tabs and a suspended driver possibly behind the wheel." Br. of Resp't, App. L at 2. The expired tabs and the possibility that the driver's license was suspended were each independent bases for the stop. *See Arreola*, 176 Wn.2d at 297. And based on the report that officers took from their interview with L.P., officers had probable cause to believe Harris raped L.P. L.P. identified Harris as one of the perpetrators, described the motels where the rapes occurred, and officers confirmed that Harris rented the rooms at the Bremerton motel as L.P. had reported. Therefore, even if this was the motivation for the stop, it would have been "constitutionally justified." *See Ladson*, 138 Wn.2d at 351; *Quezadas-Gomez*, 165 Wn. App. at 602-03.

The cases Harris relies on are inapposite to *Arreola* and *Quezadas-Gomez*. Harris contends this case is like *State v. Meckelson*, 133 Wn. App. 431, 135 P.3d 991 (2006), but his reliance is misplaced. In *Meckelson*, the defendant claimed he received ineffective assistance of counsel as a result of his counsel's failure to apprehend the law regarding pretextual traffic stops and the court remanded the case to the trial court to hold an evidentiary hearing on the matter. 133 Wn. App. at 436, 438. In contrast, there is no reason to conclude that Harris's counsel misapprehended the law on pretextual stops. Harris also relies on *Ladson*, which is likewise unhelpful to him. In *Ladson*, gang unit officers recognized a driver in a car from rumors that he was involved with drugs. 138 Wn.2d at 346. The officers *admitted* that they followed the car looking for a legal justification to

stop it. *Ladson*, 138 Wn.2d at 346.[4] They eventually pulled the car over on the grounds that the license plate tabs had expired. *Ladson*, 138 Wn.2d at 346. The court held that the stop was pretextual because the officers' actual motivation for stopping the car was their suspicion about the driver's drug involvement. *Ladson*, 138 Wn.2d at 346, 360.

Harris has not shown the stop of his car was pretextual and therefore fails to show that a motion to suppress would have likely been granted. His contention that he was deprived of effective assistance of counsel lacks merit.

B.  Unduly or Unlawully Detained

Harris additionally argues that his counsel was deficient for withdrawing the CrR 3.6 motion because he contends there was an unlawful detention. We disagree.

A *Terry* stop is limited in scope and duration to fulfill the purpose of the stop. *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). "A police officer's decision to stop an automobile is reasonable where the officer has probable cause to believe that a traffic violation has occurred." *State v. Chelly*, 94 Wn. App. 254, 259, 970 P.2d 376 (1999). If the results of the stop dispel an officer's suspicions, the stop must end. *Acrey*, 148 Wn.2d at 747. However, if "the officer's initial suspicions are confirmed or are further aroused, the scope of the stop may be extended and its duration may be prolonged." *Acrey*, 148 Wn.2d at 747. "Once the initial stop purpose is accomplished, any further detention must be based on 'articulable facts giving rise to a reasonable suspicion of criminal activity.'" *State v. Veltri*, 136 Wn. App. 818, 822, 150 P.3d 1178 (2007)

---

[4] Prior to the decision in *Ladson*, the United States Supreme Court held in *Whren v. United States*, 517 U.S. 806, 812-17, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996), that pretextual traffic stops do not violate the Fourth Amendment to the United States Constitution.

(internal quotation marks omitted) (quoting *State v. Armenta*, 134 Wn.2d 1, 15-16, 948 P.2d 1280 (1997)).

Specifically, Harris argues that his detention should have ended when Officer Meador detained and arrested him for third degree DWLS and placed him in the back of the patrol car. He says that at this point "Meador had no reason to believe that the vehicle contained evidence of the crime of expired tabs nor [third degree] DWLS." PRP at 24. He appears to argue that the officers extended the stop by asking for consent to search, which allowed Sergeant Endicott to search the car.

Harris told the officers that he was driving with a suspended license and then the officers detained and arrested him for that offense and placed him in the back of the police car. Sergeant Endicott then contacted Sergeant Plumb. Plumb, who was investigating Harris based on L.P.'s report, requested the officers to ask Harris for permission to search his car (and specifically look for any cell phones, a red backpack, and a laptop), and to book Harris in jail for second degree rape. Plumb also requested that Endicott impound Harris's car in relation to the investigation. Harris voluntary consented to the officers searching his car. The officers had probable cause to arrest Harris and they had "'articulable facts giving rise to a reasonable suspicion of criminal activity'" based on the alleged rape and L.P.'s report. *Veltri*, 136 Wn. App. at 822 (internal quotation marks omitted) (quoting *Armenta*, 134 Wn.2d at 15-16). The purpose of the traffic stop reasonably expanded to include investigations for these offenses. Therefore, Harris was not unlawfully detained. Harris's claim fails.

C. CONSENT TO SEARCH

Closely tied to this argument, Harris next claims that his consent for Sergeant Endicott to search the car was invalid because it was the result of the illegal detention. We disagree.

One exception to the warrant requirement is voluntary consent. *State v. Blockman*, 190 Wn.2d 651, 658, 416 P.3d 1194 (2018). However, when an officer unlawfully extends a detention without a reasonable suspicion that criminal activity has or is about to occur, the illegal detention may vitiate any consent to search. *State v. Tijerina*, 61 Wn. App. 626, 630, 811 P.2d 241 (1991). Several factors are relevant to determine whether consent is tainted by an illegal seizure including "'(1) temporal proximity of the illegality and the subsequent consent, (2) the presence of significant intervening circumstances, (3) the purpose and flagrancy of the official misconduct, and (4) the giving of *Miranda*[5] warnings.'" *Armenta*, 134 Wn.2d at 17 (quoting *State v. Soto-Garcia*, 68 Wn. App. 20, 27, 841 P.2d 1271 (1992), *abrogated by State v. Thorn*, 129 Wn.2d 347, 917 P.2d 108 (1996)).

Here, Harris fails to show that he was illegally detained, as discussed above. Additionally, the facts do not show that he was detained for an unreasonable period of time. Officer Meador's report indicated that he initiated the traffic stop at 7:21 PM. Based on the Bremerton Towing receipt, the tow truck arrived at 7:50 PM and the car was towed at 8:08 PM. This time period includes the time it took for Meador to contact Harris, converse with Harris, and arrest Harris. It also includes the time it took for Sergeant Endicott to ask Harris for consent to search his car and to search the car. Harris fails to show that this detention, where there was probable cause to arrest

---

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

him, would vitiate his consent to search the car. *Armenta*, 134 Wn.2d at 17. As a result, we conclude that Harris's claim fails.

D. SEARCH WARRANT

Harris argues that the search warrant obtained to search his car was the product of the illegal search by Sergeant Endicott. He says that the probable cause for the warrant was "tainted." PRP at 35. However, because, as explained above, Harris has not shown that the search was unlawful, his claim fails.

However, even assuming the initial search was unlawful, we still conclude that the warrant is supported under the independent source doctrine.

1. PRINCIPLES OF LAW

The independent source doctrine provides that evidence that is tainted by unlawful governmental actions is not subject to suppression if it is obtained pursuant to a valid warrant or other lawful independent means. *State v. Gaines*, 154 Wn.2d 711, 718, 116 P.3d 993 (2005). "Furthermore, the inclusion of illegally obtained information in a warrant affidavit does not render the warrant per se invalid, provided that the affidavit contains facts independent of the illegally obtained information sufficient to give rise to probable cause." *Gaines*, 154 Wn.2d at 718.

A search warrant can be issued only if there is a determination of probable cause. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *Thein*, 138 Wn.2d at 140. There needs to be a nexus between criminal

activity and the item to be seized and a nexus between the item to be seized and the place that will be searched. *Thein*, 138 Wn.2d at 140.

2. INDEPENDENT SOURCE DOCTRINE

Specifically, Harris contends that "[t]he probable cause on the search warrant affidavit includes the information of what [Sergeant] Endicott [saw] in the initial search which was not independent of the illegal search." PRP at 35.

He also contends there was no nexus between the car and items to be seized alleged in the search warrant complaint, absent the information from the "illegal search." PRP at 35. Harris relies on *State v. McGovern*, 111 Wn. App. 495, 45 P.3d 624 (2002), for this argument.

In *McGovern*, defendants moved to suppress marijuana found at a house, and they argued that the facts did not show a nexus between the place to be searched and the illegal activity. 111 Wn. App. 498-99. We reasoned that the nexus between the item to be seized and the place to be searched

> cannot be met merely by showing that a drug dealer lives at a particular residence and that drug dealers commonly cache drugs where they live. It can be met by showing *not only* that a drug dealer lives at a particular residence and that drug dealers commonly cache drugs where they live, *but also* 'additional facts' from which to reasonably infer that *this* drug dealer probably keeps drugs at *his or her* residence.

*McGovern*, 111 Wn. App. 499-500 (footnote omitted). However, Harris's argument fails because as explained below, Sergeant Plumb's affidavit established a nexus between the criminal activity and Harris's car.

In *Gaines*, officers conducted an illegal search of the trunk of the defendant's car, and the officers saw a weapon and rounds of ammunition and the car was impounded. 154 Wn.2d at 714. Later, officers obtained a search warrant for the car. *Gaines*, 154 Wn.2d at 714. The affidavit for the search warrant contained a statement that an officer had observed a weapon in the trunk. *Gaines*, 154 Wn.2d at 714-15. The court ultimately held that the search warrant was valid because probable cause existed to search the trunk absent the illegally obtained information. *Gaines*, 154 Wn.2d at 722. The court also noted that "striking all references to the initial, illegal search of the trunk from the warrant affidavit when assessing whether probable cause existed" balances the rights of the accused with the interest in prosecuting criminal activity. *Gaines*, 154 Wn.2d at 720.

Here, this case is similar to *Gaines*. Sergeant Plumb's affidavit of probable cause provided a detailed description of Harris's activities in his car only a few days before the car was impounded. Plumb's affidavit of probable cause was "based upon information acquired through personal interviews with witnesses and other law enforcement officers, review of reports and personal observations." Br. of Resp't, App. P at 1. He stated that on December 28, 2012, an officer responded to a sexual assault and met with the victim, L.P., in the emergency room. L.P. described Harris's activities that included both rape and promoting prostitution. L.P. also explained how over the course of a few days Harris and his companions drove L.P. in Harris's car. L.P. described how Harris used his phone and laptop for prostitution, and she said that he kept the laptop in a red

backpack. Only one of the last paragraphs of Plumb's 15-page affidavit described the traffic stop of Harris and Sergeant Endicott's search of the car where he saw the cell phone, red backpack, and laptop in the car. Therefore, we conclude that even without the information regarding the stop and Endicott's search, the affidavit provided probable cause to search the car.

E. FRUIT OF THE STOP

Harris claims that the fruits of the unlawful search "lead to other evidence and witnesses which together lead to the defendants [sic] convictions that would not have been found otherwise." PRP at 39. Because we conclude that the detention and search were lawful, as explained above, Harris's claim fails.

## II. CUMULATIVE ERROR

Harris argues that the cumulative error doctrine applies and therefore contends that he is entitled to a new trial.

The cumulative error doctrine "is limited to instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

Here, Harris claims only one error—that his counsel was ineffective for withdrawing his CrR 3.6 motion. This error, if it occurred, was not a trial error. Additionally, Harris has failed to identify any errors that would lead us to conclude that he was deprived of effective assistance of counsel. As a result, this argument lacks merit and we reject it.

CONCLUSION

We conclude that Harris's ineffective assistance of counsel claims fail because he has not shown that a motion to suppress would likely have been granted. We reject Harris's arguments and deny his petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MELNICK, P.J.

SUTTON, J.